Jeanne BAKER, Maria Valencia, Tina Thomas, and Mirtha Breslin, Individually, and on Behalf of All Other Arkansas Residents Similarly Situated *v.* WYETH-AYERST LABORATORIES DIVISION, a Division of American Home Products Corporation; Interneuron Pharmaceuticals, Inc.; and A.H. Robins Company, Incorporated

98–1479 992 S.W.2d 797

Supreme Court of Arkansas
Opinion delivered June 24, 1999

*Odom & Elliott,* by: *Bobby Lee Ododm; Walter Niblock* and *Pamela Parker,* For appellants.

*Mitchell, Williams, Selig, Gates·& Woodyard, PLLC,* by: *Lyn P. Pruitt* and *Arnold & Porter,* by: *Tim Atkeson* and *Mark Spooner,* of Counsel, for appellees.

ANNABELLE CLINTON IMBER, Justice. This is an interlocutory appeal. The appellants contend that the trial court erred when it denied their request for class certification of their tort action against the appellees. We affirm.

Jeanne Baker, Maria Valencia, Tina Thomas, and Mirtha Breslin (the "plaintiffs") took, for weight-loss purposes, the prescription drugs fenfluramine, dexfenfluramine, and phentermine. The plaintiffs took different combinations of these diet drugs, in different quantities, and for different durations. In September of 1997, the diet drugs were removed from the market because it was discovered that they might cause valvular heart disease, pulmonary hypertension, and other health problems.

In 1998, the plaintiffs filed a class action against numerous manufacturers, supplies, and distributors (the "defendants")[1] of

---

[1] The defendants involved in this appeal are Wyeth-Ayerst Laboratories Division, a Division of American Home Products Corporation; American Home Products

fenfluramine, dexfenfluramine, and phentermine. The plaintiffs later voluntarily dismissed their allegations regarding the use of phentermine. The complaint included numerous causes of action including negligence, products liability, failure to warn, and breach of express and implied warranties.[2] The plaintiffs proposed that the class be divided into a subclass of asymptomatic plaintiffs who need to undergo medical monitoring, and a subclass of plaintiffs who have serious physical injuries.

Soon thereafter, the plaintiffs filed a motion to certify the class action pursuant to Ark. R. Civ. P. 23. On October 26, 1998, the trial court denied the motion because the plaintiffs had failed to satisfy the predominance and superiority factors found in Ark. R. Civ. P. 23(b). In particular, the court ruled that a class action would not be the superior way to litigate this matter because the following individual issues predominated the common issues presented by this case: 1) the plaintiffs had different medical conditions and family histories at the time the diet drugs were prescribed; 2) the diet drugs were prescribed by different doctors who had different degrees of knowledge regarding the risks posed by the diet drugs; 3) the doctors told the plaintiffs different things about the risks posed by using the diet drugs; 4) the plaintiffs had different levels of knowledge, which they obtained from outside sources, about the risks posed by the use of the diet drugs; 5) the plaintiffs took different combinations of the three different diet drugs; 6) the plaintiffs took the diet drugs for different durations; 7) some plaintiffs have no physical injuries, while others have physical injuries but of different degrees and types; and 8) the plaintiffs have different damages in that some want medical monitoring while others request traditional damages such as medical expenses, pain and suffering, etcetera.

█ The issue on appeal is whether the trial court erred when it denied the plaintiffs' request for class certification because

---

Corporation; Interneuron Pharmaceuticals, Incorporated; and A.H. Robins Company, Incorporated.

[2] The complaint originally contained a sixth claim for medical monitoring. Upon the defendants' motion to dismiss, the plaintiffs agreed to treat medical monitoring as a type of damages instead of a separate cause of action.

the predominance and superiority requirements found in Ark. R. Civ. P. 23(b) had not been satisfied. Arkansas Rule of Civil Procedure 23(b) provides, in relevant part, that:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As we have said on several occasions, trial courts are given broad discretion in matters of class certification, and we will reverse the trial court's ruling only when the appellant can demonstrate an abuse of that discretion. *Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997).

## I. Predominance

First, we must decide if the trial court abused its discretion when it ruled that class certification was improper because the common questions of law or fact did not predominate over the questions affecting only individual members. In making this determination, we do not merely compare the number of individual versus common claims. *Mega Life & Health Ins., supra.* Instead, we must decide if the issues common to all plaintiffs "predominate over" the individual issues, which can be resolved during the decertified stage of a bifurcated proceeding. *See Seeco, supra; Mega Life & Health Ins., supra.*

For example, in *Seeco*, we held that the predominance factor was satisfied because the common issue of whether the defendant had engaged in a scheme to defraud the plaintiffs could be resolved in a class action before decertifying the case for resolution of the individual issues of reliance and diligence. *Seeco, supra.* Likewise, in *Mega Life & Health Ins.*, we held that the predominance factor was satisfied because the common issues of what type of insurance policy was issued, and what type of notice was required prior to termination could be resolved in a class action before decertifying

the case for resolution of the individual issues of reliance and damages. *Mega Life & Health Ins., supra.*

■ ■ Mass-tort actions, however, present unique certification problems because they generally involve numerous individual issues as to the defendant's conduct, causation, and damages. Courts, however, have recently distinguished between two different types of mass-tort actions: 1) mass-accident cases where injuries are caused by a single catastrophic event occurring at one time and place; and 2) toxic-tort or products-liability cases where the injuries are a result of a series of events occurring over a considerable length of time and under different circumstances. *See* JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 23.47[4] (3d. ed. 1999); HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §§ 17.01 to 17.06 (3d ed. 1992); CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1783 (2d ed. 1986). Due to the enormity and complexity of the individual issues presented by toxic-tort and products-liability cases, class certification is more common in mass-accident cases than in toxic-tort or products-liability case. *See* JAMES W. MOORE, *supra* § 23.47[4] (citing numerous products-liability and toxic-tort cases where class certification was denied); HERBERT B. NEWBERG & ALBA CONTE, supra § 17.22 (citing several products-liability cases involving tetracycline, bendectin, and DES where class certification was denied). In this regard, the Sixth Circuit has admonished that a court should "question the appropriateness of a class action" where "no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and the individual issues outnumber common issues." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988).

Likewise, we have been more inclined to approve class certification in mass-accident cases than in products-liability or toxic-tort cases. For example, we allowed class certification in the mass-accident case of *Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991). In *Summons,* several thousand people were evacuated from their homes when a train owned by Missouri Pacific overturned and released chemicals into the area. *Id.* The plaintiffs alleged that Missouri Pacific was willfully and wantonly

negligent and strictly liable for shipping ultra hazardous products. *Id.* We held that class certification was proper because the common issues of the defendant's conduct, whether the chemicals were ultra hazardous, and causation predominated over and could be resolved prior to addressing the individual and less difficult issues of damages and injuries. *Id.*

In contrast, we concluded that class certification was improper in *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995). In *Arthur*, patients who had an artificial substance called "Orthoblock" implanted in their spines filed a class-action lawsuit, which included a products-liability claim against Calcitek, the manufacturer of Orthoblock. *Id.* We held that class certification was improper because the individual issues of informed consent, causation, degree and types of injury, and damages predominated over the common issues. *Id.* In particular, as to causation the individual plaintiffs would have had to prove that their prior medical condition or history was not the cause of the injury, that they would not have undergone the implantation if they had known of the risks, and that the actions of the intermediary doctors did not abate some or all of Calcitek's liability. *Id.* Hence, the bifurcation approach could not be utilized because the defendant's liability to each plaintiff would have to be established on a case-by-case basis. *Id.* In reaching this conclusion in *Arthur*, we relied upon products-liability cases from other jurisdictions where class certification was denied because the individual issues predominated over the common issues. *See Raye v. Medtronic Corp.*, 696 F. Supp. 1273 (D. Minn. 1988) (holding that there were "not enough common questions of law or fact to justify use of the class mechanism" because issues of "causation, liability, and damages" would have to be separately litigated); *Rose v. Medtronic, Inc.*, 166 Cal. Rept. 16 (Cal. Appl. 1980) (holding that class certification was improper because the claimants had "varying periods of use of the product, varying needs for its replacement, varying elements of causation, varying degrees of injury, and varying amounts of damages").

Likewise, in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the United States Supreme Court recently denied class certification in a products-liability action. In *Amchem*, the plaintiffs filed a class action on behalf of possibly millions of people

who were exposed to asbestos. *Id.* The plaintiffs argued that class certification was proper because all members of the class had been exposed to asbestos products supplied by the defendants. *Id.* The Court responded as follows:

> Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding. Given the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about the health consequences of asbestos exposure cannot satisfy the Rule 23(b)(3) predominance standard.

*Id.* (emphasis added). The Court further opined that class certification was improper because the class members:

> were exposed to *different* asbestos-containing *products*, for *different amounts of time, in different ways*, and over *different periods.* Some class members suffer no physical *injury* or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma . . . . Each has a *different history* of cigarette smoking, a factor that complicates the causation inquiry.

*Id.* (quoting the Third Circuit's earlier decision in this same case, *Georgine v. Amchem Products, Inc.,* 83 F.3d 610 (3rd Cir. 1996)) (emphasis added). Finally, the Court called for caution in the certification of mass-tort cases when "individual stakes are high and disparities among class members great." *Id.*

We, however, are not holding that class certification should be denied in all products-liability or toxic-tort cases. Instead, we hold that class certification is improper in this case because the numerous and complex individual issues predominate over the individual issues. As the trial court correctly acknowledged, and similar to *Arthur* and *Amchem Products,* this case presents numerous individual issues that go to the heart of the defendants' conduct, causation, injury, and damages such that the defendants' liability as to each plaintiff will have to be resolved on a case-by-case basis. In fact, as in *Amchem Products,* the only thing the plaintiffs have in common is that they all took one or a combination of the diet dugs listed in the complaint.

Nor can this case be bifurcated into certified and decertified proceedings as was done in *Seeco, supra,* and *Mega Life & Health Ins., supra,* because there are few global or common issues that can be resolved in the certified stage. For example, the appellants argue that issues concerning the defendants' conduct, such as whether the diet drugs were defective products and whether the defendants adequately warned of the risks associated with taking the diet drugs, could be resolved on a class-wide basis. We disagree because even the resolution of these seemingly common issues will depend upon individual differences among the plaintiffs such as when they took the drug, the duration of use, the quantity taken, the combination used, their medical history and condition at the time of use, and the state of the art at the time the drugs were marketed. Likewise, causation cannot be resolved on a class-wide basis because there are numerous individual issues such as whether the plaintiffs assumed any risk, and what the doctors told the plaintiffs prior to use. Finally, damages cannot be resolved in a class action because some plaintiffs are asymptomatic while others have manifested physical injuries.

We have only listed some of the abundant individual issues that make certification at any stage of this proceeding improper. Accordingly, we have no hesitancy in holding that the trial court did not abuse its discretion when it ruled that the predominance factor of Rule 23(b) had not been satisfied.

## II. Superiority

Because we affirm the trial court's ruling that the predominance requirement has not been satisfied, we do not need to address the superiority requirement. Nevertheless, we have held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. *See Seeco, supra; Mega Life & Health Ins., supra.* For the reasons stated above, a class action would not be the most efficient way of handling this case because the individual issues are so pervasive that even the bifurcation approach is not feasible.

The appellants also alleged that a class action would be more "fair" to the asymptomatic plaintiffs because the damages recoverable for medical monitoring would not justify the cost of bringing individual lawsuits. This argument is flawed for two rea-

sons. First, the asymptomatic plaintiffs also asked for punitive damages, which could justify the cost of individual litigation. Second, fairness to the plaintiffs alone cannot compensate for the lack of predominance. Accordingly, we also affirm the trial court's ruling that the superiority requirement has not been satisfied.

 Because we conclude that the trial court did not abuse its discretion when it ruled that the predominance and superiority requirements of Rule 23(b) had not been satisfied, we affirm the denial of the petition for class certification.

Affirmed.