BNL EQUITY CORPORATION
(Formerly Known as United Arkansas Corporation),
BNL Financial Corporation (Formerly Known as
United Iowa Corporation), Wayne E. Ahart, Kenneth Tobey, and
Barry N. Shamas *v.* Myra Jo PEARSON, Paul Pearson,
and James Stilwell

99-78                                                  10 S.W.3d 838

Supreme Court of Arkansas
Opinion delivered February 10, 2000
[Petition for rehearing denied March 16, 2000.* ]

---

* THORNTON, J., would grant. SMITH, J., not participating.

*Friday, Eldredge & Clark*, by: *Larry W. Burks, Harry A. Light*, and *Ellen M. Owens*, for appellants.

*Pender, McCastlain & Ptak, P.A.*, by: *James R. Pender* and *Michael J. Ptak*; and *Williams & Anderson LLP*, by: *Peter G. Kumpe, John E. Tull III*, and *Stephen B. Niswanger*, for appellees.

ROBERT L. BROWN, Justice. This is an appeal from an order by the trial court granting class certification to the

proposed class under Ark. R. Civ. P. 23. The appellants in this appeal are BNL Financial Corporation, the parent company (BNL); BNL Equity Corporation, a wholly-owned subsidiary of the parent; Brokers National Life Assurance Company, a wholly-owned subsidiary of BNL Equity Corporation (BNLAC); Wayne Ahart, chairman of the board of BNL Financial and BNLAC, and also chairman of the board of the predecessor companies; Kenneth Tobey, president of BNL Financial and BNLAC, and president of the predecessor companies; Barry Shamas, executive vice president of BNL Financial and BNLAC, and vice president of the predecessor companies. Prior to 1994, the predecessor company for BNL was United Arkansas Corporation (UAC) and the predecessor company for BNLAC was United Arkansas Life Assurance Company (UALAC). The appellees in this appeal are the plaintiffs and class representatives in the class action — Myra Jo Pearson, Paul Pearson, and James Stilwell.

On April 30, 1996, the Pearsons filed the original complaint against the appellees for violation of the Arkansas Securities Act and specifically for violation of Ark. Code Ann. § 23-42-106(a)(1) (Supp. 1999). The defendants moved the trial court to dismiss the case for lack of subject-matter jurisdiction or to transfer the case to chancery court because the equitable defense of laches had been asserted. The motion was denied. On May 19, 1998, Stilwell joined as a party plaintiff in the third amended complaint. The cause of action centered around misrepresentations or omissions in two public offering prospectuses and a scripted sales presentation. The first public offering sought purchasers of stock in UAC between the dates of May 1, 1989, and May 1, 1991. The second public offering also sought purchasers of stock in UAC. That offering commenced on May 1, 1991, and ended on May 1, 1992.

According to their complaint, the Pearsons purchased stock under both offerings on the dates of April 24, 1991; May 9, 1991; and February 20, 1992. Their total investment in UAC stock was $10,660. Stilwell purchased stock under the first offering on August 30, 1990. His total investment was $2,000. During the first offering, UAC raised $4,110,050 from 1,251 investors. Under the second offering, it raised $2,071,300 from 590 investors.

In their complaint, the Pearsons and Stilwell alleged pervasive deception by the appellants with regard to their entire investment

plan. Specifically, the Pearsons and Stilwell alleged five material misrepresentations or omissions of material facts that were made through the use of the two public offering prospectuses and the scripted sales presentation. Those misrepresentations or omissions were: (1) that UAC's primary business objective and principal business activity would be the ownership and operation of a life insurance subsidiary which would primarily offer customary forms of life insurance products; (2) that UAC and its life insurance subsidiary (UALAC) would hire and license captive sales agents and that the captive sales force would use a one-on-one sales method with clients and use personal visits by agents to homes and businesses; (3) that there were no then-existing opportunities known to UAC or its management to purchase any existing insurance company or other business; (4) that the key management team of UAC, primarily appellants Ahart, Shamas, and Tobey, had achieved a strong record of success and built four successful insurance holding companies; and (5) that appellant Tobey had nine or ten years experience in the life insurance business. According to the complaint, contrary to these representations, the primary business activity of the appellants has been dental insurance, a captive sales force was not utilized, opportunities to purchase existing insurance companies were available, and the experience of the management team in the insurance business was misrepresented. The plaintiffs tendered their shares of UAC to the company and prayed for class certification, damages, interest, and attorneys' fees.

The Pearsons and Stilwell moved the trial court to certify a class consisting of all of the purchasers of UAC stock under the first and second offerings. A hearing was held, and briefs were submitted by the parties.

On August 27, 1997, the trial court entered an order granting class certification.

## I. Rule 23 Arguments

The primary thrust of the appellants' appeal is that these multiple lawsuits simply cannot be tried as a class action because the Rule 23 criteria of typicality, predominance, and superiority have not been met. See Ark. R. Civ. P. 23(a) & (b). The claims of the class representatives are atypical, according to the appellants. Moreover,

they contend that common issues of law or fact do not predominate over individual issues. They point out, in particular, that the knowledge of each investor about the investment purchased is an element of the alleged Securities Act violation under § 23-42-106(a)(1). Thus, individual trials on the knowledge issue would be a necessity. In short, they contend that a class action is not the superior means of resolving the multiple causes of action. As a secondary matter, they urge that should this court affirm the class certification, it should direct the trial court to provide more specifics on how the matter will be managed and tried.

We have held that the determination of whether Rule 23 criteria have been satisfied and whether the class action should proceed rests within the broad discretion of the trial court and will not be reversed absent an abuse of discretion. *See, e.g., Fraley v. Williams Ford Tractor and Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999); *Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997); *International Union of Elec., Radio & Mach. Workers v. Hudson*, 295 Ark. 107, 747 S.W.2d 81 (1988) (broad discretion in trial court extends to protection of absent class members but also to question of whether class action should proceed).

Before we examine the Rule 23 criteria, however, we feel constrained to address a common thread that runs throughout the appellants' appeal. The appellants contend that discussion of the Rule 23 criteria must, by necessity, bring into play some examination of the merits of the claims including their defenses, and that we should not rigidly enforce our proscription against a merits analysis at this stage. Without weighing the merits, the appellants posit that this court cannot decide whether the claims of the class representatives are typical or that claims of the class members are common and predominate.

The appellants, however, are plowing old ground in raising an issue that has clearly been decided by this court. Most recently, we said:

> We have held that neither the trial court nor the appellate court may delve into the merits of the underlying claim in determining whether the elements of Rule 23 have been satisfied. In that regard a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action.

Thus, the propriety of a class action is "basically a procedural question." (Citations omitted.)

*Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. at 335, 5 S.W.3d at 431 (1999). In *Fraley*, we held that the trial court could not examine the affirmative defenses of release and consent in deciding whether the class should be certified. The *Fraley* case was not an anomaly. This court has been consistent in holding that, whether the plaintiff class will ultimately prevail on the merits is immaterial to the issue of class certification. *See, e.g., Mega Life & Health Ins. Co. v. Jacola, supra; Farm Bureau Mut. Ins. Co. v. Farm Bureau Policy Holders & Members*, 323 Ark. 706, 918 S.W.2d 129 (1996).

■ We hold once more that we will not look to the merits of the class claims or to the appellants' defenses in determining the procedural issue of whether the Rule 23 factors are satisfied. We turn then to the Rule 23 criteria of typicality, predominance, and superiority, which we will discuss *seriatim*. We will conclude by addressing the management point.

### a. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The appellants vigorously contend that the amount of information provided to the Pearsons and Stilwell concerning their UAC investments defeats their ability to show that their knowledge is *typical* of the knowledge of all other class members, as Rule 23(a)(3) requires. They further argue that there are substantial questions relating to unique defenses applicable to the Pearsons and Stilwell that would not be applicable to other class members. Their argument is best summarized by a statement on this point from the Second Circuit Court of Appeals that a class certification is not appropriate when a putative class representative is subject to unique defenses that threaten to become the focus of the litigation. *See Gary Plastic Packaging v. Merrill Lynch*, 903 F.2d 176 (2nd Cir. 1990), *cert denied.* 498 U.S. 1025 (1991).

■ We disagree that typicality is lacking in the instant case. Our caselaw is clear that the essence of the typicality requirement is the conduct of the defendants and not the varying fact patterns and

degree of injury or damage to individual class members. *See Mega Life and Health Ins. Co. v. Jacola, supra; Direct Gen. Ins. Co. v. Lane,* 328 Ark. 476, 944 S.W.2d 528 (1997); *Farm Bureau Mut. Ins. v. Farm Bureau Policyholders, supra; Chequenet Systems, Inc. v. Montgomery,* 322 Ark. 742, 911 S.W.2d 956 (1995); *Summons v. Missouri Pac., R.R.,* 306 Ark. 116, 813 S.W.2d 240 (1991); *see also* I Herbert B. Newberg, *Newberg On Class Actions,* § 3.13, at 74-77 (3d ed. 1992).

We have stated that "claims are typical when they " 'arise from the same wrong allegedly committed against the class.' " *Farm Bureau Mut. Ins. Co.,* 323 Ark. at 711, 918 S.W.2d at 131, *quoting Chequenet Systems, Inc. v. Montgomery,* 322 Ark. at 749, 911 S.W.2d at 959. In the case before us, there is no question but that the class representatives have alleged a common wrong by the appellants that affects every class member. That conduct surrounds two misrepresented public offerings and the allegations that the appellants induced investors to invest in UAC with either false statements or omissions in the two offering prospectuses and the scripted sales presentation.

We are persuaded that the Pearsons and Stilwell have established that their claims are typical of all class members for certification purposes. There was no abuse of discretion by the trial court on this point.

### b. Preponderance

The appellants next contend that Rule 23(b) requires that the trial court find that "the questions of law and fact common to the members of the class predominate over any questions affecting only individual members," and that that requirement has not been met. They urge that the predominance difficulty in this case relates to the three-year time period for the alleged wrongdoing and the varying degrees of knowledge of individual class members about the offerings during that time frame. For example, they show this court that the first offering covered the period between May 1, 1989, and May 1, 1991, and that the second offering covered the period between May 1, 1991, and May 1, 1992. They then argue that though the class representatives only base their claims on three documents (first offering prospectus, second offering prospectus, and a scripted sales presentation), there was a "host of other information" available to

prospective investors in UAC stock during this time. As examples, they direct us to the thirty-two regional meetings held for potential shareholders and investors; a 1991 annual report on the company; an April 10, 1992 letter and brochure sent to shareholders; and forty-four public filings with the Arkansas Insurance Commissioner relating to the insurance being offered by UAC and UALAC.

The appellants contend that the availability of this additional information to class members raises substantial individual questions of the degree of knowledge surrounding the UAC investment. They claim that by defining the class as all purchasers who purchased UAC's securities, the trial court's analysis was "too cursory" and ignored the critical element of each class member's cause of action, which is that purchaser's knowledge of what the investment entailed. They maintain that this court has previously refused to certify a class in two mass tort actions in the medical field where individual issues relating to knowledge predominated. *See Baker v. Wyeth-Ayerst Lab. Div.*, 338 Ark. 242, 992 S.W.2d 797 (1999); *Arthur v. Zearley*, 320 Ark. 273, 895 S.W.2d 928 (1995).

■ The starting point for our examination of the predominance issue is whether a common question of law or fact exists in this case for all class members. *See* Ark. R. Civ. P. 23(b); *Mega Life & Health Ins. Co. v. Jacola, supra. Lemarco, Inc. v. Wood*, 305 Ark. 1, 804 S.W.2d 724 (1991); *International Union of Elec., Radio & Mach. Workers, supra*. We conclude that it does. That common question relates to the allegations of fraudulent representations or omissions by the appellants in the two prospectuses and scripted sales presentation which induced the class members to buy the UAC securities. The next issue is whether this common question predominates over individual questions. We believe that it does.

This case, to our way of thinking, raises an issue comparable to that asserted in *Seeco, Inc. v. Hales*, 330 Ark. 402, 954 S.W.2d 234 (1997). There, the argument mounted by the defendants was that the class sought recovery on a fraud theory which required, as an element, proof of reliance on the misrepresentation by each class member. We held that even though lack of reliance by individual class members might be an argument raised by the defendants as a defense, the existence of the alleged scheme to defraud royalty owners was a common question for all class members. We concluded that the alleged scheme was the overarching issue and the

starting point in resolving the matter. We held to the same effect in *Fraley v. Williams Ford Tractor and Equip. Co., supra,* where the plaintiffs alleged that the equipment dealer had intentionally converted insurance premiums from the class members as the central fraudulent scheme. Proof of that scheme, we concluded, predominated over individual questions.

■ Similarly, in the case at hand, a common question of misrepresentation under § 23-42-106(a)(1) is the linchpin of every class member's case and must be resolved as the first step. Resolution of this issue predominates over potential individual issues relating to investor knowledge or affirmative defenses.

The medical mass tort cases, on the other hand, are readily distinguishable in that individual issues clearly predominated in those cases. In *Arthur v. Zearley, supra,* the thrust of the plaintiffs' cause of action in the Orthoblock cases was lack of informed consent under the Medical Malpractice Act, which necessarily brought into play the extent of the information imparted to each patient by his or her physician and that patient's medical condition. In *Baker v. Wyeth-Ayerst Lab. Div., supra,* which was a products-liability case related to prescriptions for differing combinations of diet drugs, the cause of action was premised on varying combinations of drugs taken by each patient as well as time of patient usage, quantities taken, and medical histories. Thus, in neither *Arthur v. Zearley, supra,* nor *Baker v. Wyeth-Ayerst Lab. Div., supra,* did a common fraudulent scheme predominate over the individual circumstances of each patient. In short, the information conveyed by the defendant physicians varied with each patient in the Orthoblock cases and, likewise, the prescriptions of the diet pills in *Baker,* were patient specific. This is categorically different from the matter at hand where all class members predicate their claims of § 23-42-106(a)(1) misrepresentations on the offering prospectuses and the scripted sales presentation.

■ We hold that the trial court correctly found that the wrongful conduct alleged is common to the class and that this issue of liability predominates over individual questions.

### c. Superiority

Next, the appellants contest the trial court's conclusion "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy" under Rule 23(b). The appellants' contention on this point is analogous to their predominance argument. They claim that the trial court's "simple" finding that the class was numerous and the claims small was not enough to satisfy the superiority requirement. They again contend that the knowledge issue for individual claimants will render a class action grossly inefficient and will undercut any notion of judicial economy. Only three claimants filed the lawsuit, they emphasize, and this hardly justifies the time and expense of a class action.

Again, we disagree. The avoidance of a multitude of suits lies at the heart of any class action certification. And though smallness of the claims may not be the sole basis for certifying a class, it is a factor to be considered in deciding superiority. *See International Union of Elec., Radio & Mach. Workers v. Hudson, supra.* Furthermore, here the alternative to a class action would be numerous joinders, wholesale intervention, and several hundred small lawsuits which would be totally inefficient and wholly unmanageable. Surely, neither the parties nor the judicial system would benefit from a legion of lawsuits that are numerous, duplicative, and time consuming. *See Snider v. Upjohn,* 115 F.R.D. 536 (E.D. Pa. 1987).

There is, too, the point that without the class action procedure, numerous meritorious claims might go unaddressed. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985). Plus, by limiting the issues to be tried to the ones that are common to all class members such as the alleged scheme of misrepresentation or omission and common defenses, the trial court can achieve real efficiency. *See Seeco, Inc. v. Hales, supra.*

The appellants raise the spectre that with the potential for individual suits splintering on issues like investor knowledge, trial of the class action could unravel and turn into a procedural nightmare. We will not speculate on this eventuality. We simply hold that at this stage there is a common issue related to the appellants' conduct and liability that predominates over individual questions and renders a class action the superior method for litigating the matter.

We are further convinced that a class action is fair to both sides. As we said in *Seeco, Inc. v. Hales, supra,* and *Lemarco, Inc. v. Wood,* 305 Ark. 1, 804 S.W.2d 724 (1991), even if the trial court eventually decides that individual claims have to splinter in bifurcated proceedings, resolution of the issue of wrongful conduct common to all class members can achieve real efficiency as a starting point. We also note that there is a real benefit to the appellants in a class action in that they have the opportunity to nip multiple claims in the bud with common defenses such as the investors' knowledge of the investment purchased, lack of the appellants' knowledge concerning the misrepresentations, and statute of limitations. We conclude that the superiority requirement has been met.

### d. Management

Because we hold that the contested Rule 23 criteria have been satisfied, we now address the appellants' request for guidance from the trial court on how the trial of this matter will be managed.

We first observe that the trial court in this case has a firm grasp of what is involved in this class action as is evidenced by its well-reasoned, twenty-four-page order granting class certification. The trial court determined that a class action was appropriate, after analyzing the Rule 23 factors that are at issue in this appeal. This court has recognized that the ability to manage and guide a class action is a necessary part of a trial court's decision to certify. *See International union of Elec., Radio & Mach. Workers v. Hudson, supra.* We further have alluded to the substantial power in the trial court to manage a class action. *Id.; see also Summons v. Missouri Pac., R.R., supra.*

We have also noted the ability of the trial court to decertify should the action become too unwieldy. Rule 23 specifically contemplates that circumstance when it states: "An order under this section may be conditional and it may be altered or amended before the decision on the merits." Ark. R. Civ. P. 23(b). In the recent case of *Fraley v. Williams Ford Tractor & Equip. Co., supra,* we quoted from *Newberg On Class Actions* regarding the decertification option and the fact that this flexibility in the trial court is vital to "judicious use of the class device." *See I Newberg On Class Actions* § 7.47, at 146 (3d ed. 1992).

■ We have no hesitancy in placing the management of this class action in the trial court. That is what the rule contemplates, and, as already described, real efficiencies can be obtained by resolving common issues, both for the plaintiff class and the appellants. Were we, on the other hand, to speculate on class management or direct the trial court at this stage to present the parties with a management plan, we would be interfering in matters that clearly fall within the trial court's bailiwick.

## II. Statute of Limitations

The appellants next take the trial court to task for refusing to consider their statute-of-limitations defense to class member claims as a class certification issue. The trial court was correct. We have made it clear in our cases that any analysis of the limitations defense at the class-certification stage is a merits determination, and, therefore, inappropriate. *See Fraley v. Williams Ford Tractor and Equip. Co., supra; see also Seeco, Inc. v. Hales, supra, quoting,* I Herbert B. Newberg, *Newberg On Class Actions* § 4.26, at 104 (3d ed. 1992). The trial court was correct in stating that consideration of the limitations defense amounted to delving into the merits.

■ Ironically, after stating the law correctly in its order, the trial court proceeded to decide the limitations question. It was error for the court to do so, and we will disregard its discussion of this issue.

## III. General Issues

The appellants conclude that the trial court's certification order would require bifurcated trials. This raises, in their judgment, an issue under the Seventh Amendment to the United States Constitution. They contend that any process which contemplates using two different juries for one lawsuit to resolve common issues and individual issues violates this amendment.

■ We said in *Seeco, Inc. v. Hales, supra,* when a comparable issue was raised under Article 7, Section 2, of the Arkansas Constitution, that we did not know at the certification point whether more than one jury would ultimately be necessary. This continues to be our position. We will not speculate on the question of the

inevitability of bifurcated trials or issue an advisory opinion on an issue that well may not develop.

The appellants also raise the issue of subject-matter jurisdiction in connection with their affirmative defense of laches. Raising this defense, they maintain, requires dismissal or a transfer of the entire case to chancery court. This is the same issue that was presented to the trial court in 1996 and denied. The appellants are incorrect in their conclusion. It is true that laches is a defense cognizable only in equity when equitable relief is sought. *See Landreth v. First National Bank*, 45 F.3d 267 (8th Cir. 1995); *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 310 Ark. 342, 836 S.W.2d 853 (1992). It is not true, however, that a defendant can assert an equitable defense to a complaint at law and thereby divest a plaintiff of jurisdiction to have his claim heard in circuit court. The appellants draw our attention to *Schultz v. Rector Phillips Morse, Inc.*, 261 Ark. 769, 522 S.W.2d 4 (1977), where we held that the affirmative defense of laches was applicable to a claim under the predecessor statute to § 23-42-106. But in *Schultz*, the plaintiffs initiated their suit in chancery court. That is altogether different from the situation we have before us.

We conclude that the trial court did not abuse its discretion in any respect in certifying this class.

Affirmed.

THORNTON, J., dissents.

RAY THORNTON, Justice, dissenting. I am concerned that the court has opened the door to class actions without requiring the careful analysis that should be given before certification. The court once held that "with regard to Rule 23 motions, we have specifically stated that we will follow the federal rules in class actions" *Farm Bureau Mut. Ins. v. Farm Bureau Policy Holders*, 323 Ark. 206, 918 S.W.2d 129 (1996). However, we have eliminated the requirement under federal rules that there must be a rigorous analysis for certification as outlined in *General Telephone Company of South West v. Falcon*, 457 U.S. 147 (1982). *See Mega Life & Health Ins. Co. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997).

In my view, we are approaching the point that class actions have been so extended that they elevate efficiency over legal principles. While I respectfully dissent from the direction the majority is

taking, I recognize that the grounds for my dissent are being eroded by the cases we have recently decided. I respectfully dissent.