TERIS, LLC; Op-Tech Environmental Services, Inc.;
CSX Transportation, Inc. *v.* Harold CHANDLER; Connie
Chandler; Jerry Fifer; Pearline Fifer; Benito Glosson;
Latoria Glosson; Jimmie Lark; Mildred Lark; Alvin McGhee;
Sheila McGhee; Carolyn Yarbrough; Eddie Yarbrough, Jr.

08-692                                         289 S.W.3d 63

Supreme Court of Arkansas
Opinion delivered November 13, 2008

*Fee, Smith, Sharp & Vitullo, L.L.P.*, by: *Thomas W. Fee, Howard J. Klatsky,* and *P. Wes Black; Compton, Prewett, Thomas & Hickey, L.L.P.*, by: *Matt Thomas*, for appellant Teris, L.L.C.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Sherry P. Bartley*, for appellant Op-Tech Environmental Services, Inc.

*Friday, Eldredge & Clark, LLP*, by: *Kevin A. Crass* and *R. Christopher Lawson*, for appellant CSX Transportation, Inc.

*Allen P. Roberts, P.A.; John W. Walker, P.A.; Vickery & Carroll, P.A.*; and *McMath Woods, P.A.*, for appellees.

DONALD L. CORBIN, Justice. This appeal of a class-action certification is before us again after we reversed and remanded the matter due to the fact that the certification order

contained two different class definitions. *See Teris, LLC v. Golliher,* 371 Ark. 369, 266 S.W.3d 730 (2007) (*Teris I*). Appellants Teris, LLC, Op-Tech Environmental Services, Inc., and CSX Transportation, Inc., again argue that the trial court erred in granting Appellees' request for class certification. As this is a second appeal, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7). We find no error and affirm.

The underlying facts of this case are sufficiently set forth in *Teris I.* Suffice it to say, Appellees, who are individuals who were within the mandatory evacuation area following an explosion and fire at the Teris facility, filed suit against Appellants and sought class-action status. Upon an order by the trial court granting class certification, Appellants appealed to this court, arguing that class certification was not warranted in several respects. *See Teris I.* Because the trial court's order contained differing class definitions, we reversed and remanded the matter for clarification as to the appropriate class definition.

Upon remand, Appellees filed a motion submitting an amended and substituted order granting class certification. In the proposed order, four plaintiffs were removed from the case caption and the class was defined as follows:

(a) All adults;

(b) Who as of January 2, 2005;

(c) Resided or occupied a business premise in Areas A, B, or C, as shown on Exhibit "1"; and

(d) Who, in fact, physically evacuated from Areas A, B, or C, as shown on Exhibit "1" because of the fire and explosion event at Teris on that date.

In addition to removing certain named plaintiffs and modifying the class definition, the proposed order sought the following additional changes:

(b) Clarifies that the damages issue to be resolved in a common trial is limited to the value of the discomfort, disruption and inconvenience proximately caused due to each class member being evacuated from his or her home or business premises due to the

January 2, 2005 event that gives rise to this action, and further sets out that these claims may be tried in two subclasses of those who returned the evening of January 2, 2005, and those who were allowed to return the following day;

(c) Provides that the court will determine the issue of strict or absolute liability, not the jury; and

(d) Provides that individual trials will be held, if necessary, on elements of damages that are not common to each member of the class. These trials will be limited to elements of damages proximately caused by the January 2, 2005, incident that are not common to the entire class, including, without limitation, (i) actual medical expenses associated with physician visits; (ii) actual expenses related to meals, lodging, and travel resulting from being evacuated; (iii) lost income, earnings, or wages; (iv) expenses actually incurred, or compensation for, removing soot and smoke residue from real and personal property.

The trial court held a hearing on the proposed amended order on May 2, 2008. Thereafter, the court entered of record the amended and substituted order granting class certification. This appeal followed.

### Standard of Review

Class actions are governed by Rule 23 of the Arkansas Rules of Civil Procedure which provides, in pertinent part:

(a) *Prerequisites to Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy. At an early practicable time after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. For purposes of this subdivision, "practicable" means reasonably capable of being accomplished. An order under this section may be altered or amended at any time before the court enters final judgment. An order certifying a class action must define the class and the class claims, issues, or defenses.

Our law is well settled that the six requirements for class-action certification include: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *See Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008).

The determination that the class-certification criteria have been satisfied is a matter within the broad discretion of the trial court, and this court will not reverse the trial court's decision absent an abuse of that discretion. *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008); *Ark. Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002). In reviewing a class-certification order, this court focuses on the evidence in the record to determine whether it supports the trial court's conclusion regarding certification. *Hicks*, 349 Ark. 269, 78 S.W.3d 58. Neither the trial court nor this court shall delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met. *Id.* In this regard, our court has said that " 'a trial court may not consider whether the plaintiffs will ultimately prevail, or even whether they have a cause of action.' " *Bryant*, 374 Ark. at 42, 285 S.W.3d at 638 (quoting *Carquest of Hot Springs, Inc. v. Gen. Parts, Inc.*, 367 Ark. 218, 223, 238 S.W.3d 916, 920 (2006)). We, thus, view the propriety of a class action as a procedural question. *See id.*

In the present appeal, in addition to challenging the class definition, Appellants also challenge the trial court's findings with regard to typicality, predominance, and superiority, as well as some procedural aspects of the certification order. Remaining mindful of our standard in reviewing class-certification orders, we now turn to the issues on appeal.

## 1. Class Definition

The first argument on appeal is whether the trial court erred in certifying this as a class action because of an insufficient class

definition. Teris[1] argues that the class as defined by the amended and substituted order does not provide sufficiently objective criteria with which to identify class members. Specifically, Teris contends that the class definition fails to define the phrase "occupied a business premises" or the term "evacuated" and further avers that in order to ascertain class membership, the trial court will necessarily have to engage in an individualized inquiry as to whether a person evacuated and the subjective reasons for doing so. Appellees counter that the terms utilized in the class definition are normal, everyday terms and that the definition provides a feasible manner for determining class membership.

In addressing the issue of class definition, this court has recently said:

> It is axiomatic that in order for a class action to be certified, a class must exist. The definition of the class to be certified must first meet a standard that is not explicit in the text of Rule 23, that the class be susceptible to precise definition. This is to ensure that the class is neither "amorphous," nor "imprecise." Concurrently, the class representatives must be members of that class. Thus, before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.

*Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 613-14, 232 S.W.3d 444, 448 (quoting *Hicks*, 349 Ark. 269, 280-81, 78 S.W.3d 58, 64-65). This court further elaborated that a class must be susceptible to definition and cannot be amorphous or imprecise. *Hicks*, 349 Ark. 269, 78 S.W.3d 58; *Ferguson v. Kroger Co.*, 343 Ark. 627, 37 S.W.3d 590 (2001). In *Ferguson*, this court pointed out that clearly defining the class insures that those people who are actually harmed by the defendant's wrongful conduct will participate in the relief ultimately awarded.

The present case is distinguishable from *Ferguson* and *Southwestern Bell Yellow Pages v. Pipkin Enterprises., Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004), two notable cases where this court found that

---

[1] Neither Op-Tech nor CSX challenges the sufficiency of the class definition.

a class was not properly defined. In *Pipkin*, a case involving an allegation that the appellant improperly charged interest on overdue payments for advertising contracts, the court stated that there were no objective criteria that the circuit court could use to identify class members. The class was defined as: "All Arkansas customers of Defendants who paid or were charged usurious interest charges since November 15, 1997." *Pipkin*, 359 Ark. at 405, 198 S.W.3d at 117. This court reasoned that the circuit court, in determining class membership, would have to make a determination of the ultimate issue, which was whether each prospective class member had been charged interest in excess of that allowed by the Arkansas Constitution.

In *Ferguson*, 343 Ark. 627, 37 S.W.3d 590, this court affirmed the trial court's denial of class certification on the basis that there was no defined class, nor was it possible to define the class. *Ferguson* involved a proposed class action against Kroger for negligence, breach of contract, unjust enrichment, misrepresentation, and conversion stemming from allegations that the store induced people to shop there by misrepresenting the savings from double coupons. In ruling that there was no defined class, this court pointed out that identifying class membership was practically an insurmountable challenge because of all the varied facts at issue in the case. This court concluded that under that proposed definition, anyone could claim to have been induced to shop at Kroger to take advantage of the double coupons, and there would be no objective criteria, i.e., records, to verify such claim.

Here, the class is defined as all adults, who as of January 2, 2005, resided or occupied a business premise in Areas A, B, or C, as shown on Exhibit "1"; and who, in fact, physically evacuated from Areas A, B, or C, as shown on Exhibit "1" because of the fire and explosion event at Teris on that date.[2] This definition clearly provides objective criteria for ascertaining class membership without requiring an investigation into the merits of each individual's claim. *See, e.g., Bryant*, 374 Ark. 38, 285 S.W.3d 634. Teris's argument that the definition is deficient for failing to define certain terms is without merit, as those terms are capable of being understood.

---

[2] Exhibit 1 is a geographic map detailing the three areas near the Teris facility from which individuals evacuated following the explosion and fire.

## 2. Typicality

Second, both Teris and Op-Tech[3] argue that the trial court's order should be reversed because the class members' claims and defenses are not typical of the class. According to Appellants, the experiences of the named representatives with regard to existence of an injury, nature and cause of an injury, and calculation of damages are not typical of the purported class. According to Appellants, the injuries of the putative class members are neither sufficiently similar nor typical.

Appellees argue to the contrary that while the exact impact of Appellants' conduct on each of them may not be precisely the same, it does not mean that the value of each claim is so different as to warrant separate trials. In advancing their argument that they satisfied the typicality requirement, Appellees rely on this court's holding in *Summons v. Missouri Pacific Railroad*, 306 Ark. 116, 813 S.W.2d 240 (1991), and argue that the present case is virtually indistinguishable from *Summons*.

In *Summons*, this court affirmed the class certification of plaintiffs who claimed they suffered a variety of damages when the defendant's train overturned and released volatile and toxic chemicals into the area. The common issues in that case were the existence of strict liability, and whether the railroad was negligent, while the individual issues were proximate causation and the extent of damages suffered by each class member. In addressing the typicality factor in *Summons*, this court referred to H. Newberg, *Class Actions* § 3.13, and stated:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was

---

[3] Reference to Op-Tech is actually reference to both CSX and Op-Tech who submitted a joint brief in this matter, but for purposes of clarity, we will simply refer to Op-Tech where it is necessary to distinguish among Appellants.

directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims. [Footnotes omitted.]

306 Ark. at 121, 813 S.W.2d at 243.

■ Much like in *Summons*, Appellants here attempt to argue that there is no typicality because Appellees' claims vary, both among each other and from other possible class members. This argument reveals, however, the flawed analysis utilized by Appellants in addressing the issue of typicality. As explained by Newberg, and approved by the court in cases such as *Summons* and its progeny, the correct inquiry focuses on whether the claims of the representatives and the class members are based on the same legal theory and include allegations that the same illegal conduct affected the representatives and the class sought to be represented.

Here, Appellees alleged negligence and strict liability on the part of Appellants as a result of the explosions and fires at the Teris facility that resulted in their evacuation. These allegations are the same for all parties. In addressing the criteria of typicality, the trial court noted that all of the claims arose from a single event, the fire and explosion at the Teris facility and that one element of damage sought is common to all representatives and class members, namely damages for discomfort, disruption, and inconvenience. The fact that individual members of the class may have varying damages as a result of the single incident, the explosions and fires and resulting evacuation, does not defeat the conclusion that typicality is satisfied. In fact, our case law is clear that the essence of the typicality requirement is the conduct of the defendants and not the varying fact patterns and degree of injury or damage to individual class members. *See BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000); *Summons*, 306 Ark. 116, 813 S.W.2d 240. Accordingly, we cannot say that the trial court erred in finding that Appellees established the requirement of typicality.

### 3. Predominance

As their next point on appeal, Teris and Op-Tech argue that class certification is inappropriate in this matter because common issues of fact and law do not predominate over individual issues. Teris takes issue with that part of the trial court's order that provides that "[e]ach Plaintiff and class member . . . suffered at least

one element of damage that was common to all, namely the discomfort, disruption, and inconvenience proximately resulting from the evacuation." According to Teris, this fact has not been proven and the levels of alleged discomfort, disruption, and inconvenience will be different for all class members. Op-Tech avers that certification is not warranted where the only thing that class members have in common is that they were exposed to an explosion at the Teris facility. According to Op-Tech, the issue of proximate cause is inherently individual for each class member and is not suitable for a common trial. Finally, within this argument, Op-Tech argues that allowing this matter to proceed as a class action would violate their right to due process.

Appellees counter that there is commonality here, as the issues of liability, allocation of fault, causation, and damages are common to all class members. Moreover, because each of these issues predominates over any individual issues it was proper for the trial court to grant class certification. Moreover, Appellees aver that the damages at issue were proximately caused by a single event and were suffered by every member of the class. Finally, Appellees argue that there is no merit to Op-Tech's claim regarding a violation of its constitutional rights.

In addressing the issue of predominance, the trial court noted that it does not merely compare the individual versus common claims, but rather must decide if the common issues predominated over individual issues that could be resolved during a decertified stage of bifurcated proceedings. The trial court further noted that Appellants' common conduct resulting in the fire and explosion forms the basis for the class action and affected all class members by causing their evacuation and thus predominated over any individual issues. We cannot say that the trial court abused its discretion in this regard.

Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Ark. R. Civ. P. 23(b). In *Johnson's Sales Co. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007), this court reiterated that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied, even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *Id.* Moreover, this court

has recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *Id.*

The ultimate question to be resolved in analyzing the issue of predominance is whether there are overarching issues that can be addressed before resolving individual issues. *Johnson's Sales*, 370 Ark. 387, 260 S.W.3d 273. However, if preliminary issues are individualized, then the predominance requirement is not satisfied. *See id.* Indeed, a case that presents numerous individual issues regarding the defendants' conduct, causation, injury, and damages will best be resolved on a case-by-case basis. *Id.*

This court has noted that it is more inclined to approve class certification in mass-accident cases than in products–liability or toxic-tort cases. *See Baker v. Wyeth-Ayerst Labs. Div.*, 338 Ark. 242, 992 S.W.2d 797 (1999). *Baker*, a products-liability case stemming from the manufacture of certain diet drugs later discovered to cause health problems, explained the distinction between the two different types of mass-tort cases, stating:

> Mass-tort actions, however, present unique certification problems because they generally involve numerous individual issues as to the defendant's conduct, causation, and damages. Courts, however, have recently distinguished between two different types of mass-tort actions: 1) mass-accident cases where injuries are caused by a single catastrophic event occurring at one time and place; and 2) toxic-tort or products-liability cases where the injuries are a result of a series of events occurring over a considerable length of time and under different circumstances. *See* James W. Moore, *Moore's Federal Practice* § 23.47[4] (3d ed. 1999); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §§ 17.01 to 17.06 (3d ed. 1992); Charles Alan Wright et al., *Federal Practice and Procedure* § 1783 (2d ed. 1986). Due to the enormity and complexity of the individual issues presented by toxic-tort and products-liability cases, class certification is more common in mass-accident cases than in toxic-tort or products-liability case. *See* James W. Moore, *supra* § 23.47[4] (citing numerous products-liability and toxic-tort cases where class certification was denied); Herbert B. Newberg & Alba Conte, *supra* § 17.22 (citing several products-liability cases involving tetracycline, bendectin, and DES where class certification was denied).

338 Ark. at 247, 992 S.W.2d at 800. While this court ultimately determined that class certification was not appropriate in *Baker* because there were numerous and complex individual issues that predominated over any common claims, *Baker* is distinguishable from the present case.

Here, there are common questions regarding liability that can be easily resolved and these questions predominate over any individual issues that may arise. As the trial court reasoned, most of the discomfort, disruption, and inconvenience claims are sufficiently similar that they may be resolved in a single trial. The fact that damages may vary for members of the class does not defeat the finding of predominance. Appellants' attempts to argue that some people may claim damages for physical injuries, while others had no physical manifestations following the fire and explosions and thus there can be no commonality or predominance is simply unpersuasive. In *Bryant*, 374 Ark. 38, 285 S.W.3d 634, this court reiterated that the mere fact that individual issues and defenses may be raised does not defeat class certification where there are common questions regarding a defendant's wrongdoing. Moreover, in examining predominance, we do not merely compare the number of individual versus common claims. Finally, the damages sought in this case are identical to the damages sought in *Summons*, 306 Ark. 116, 813 S.W.2d 240.

Before leaving this point, we note that we are unpersuaded by Op-Tech's reliance on *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006), a mass-accident case stemming from a chemical-plant fire. There, the court rejected a motion for class certification because it found individual issues regarding exposure, doses, health effects, and damages would dominate any common claims. *Steering Committee* is distinguishable from the present case, both factually and procedurally. First, there was no evacuation at issue in *Steering Committee* but rather claims for personal injury resulting from the exposure to the fire; whereas here, the principal claims are for inconvenience related to evacuating, a situation similar to that in *Summons*, where certification was appropriate. Moreover, *Steering Committee* was decided under the federal standard for class certification, which requires a more rigorous review that has previously been rejected by this court. Accordingly, we find no merit in the argument that the predominance element has not been satisfied.

Finally, we note that Op-Tech argues that allowing this case to proceed as a class action would violate their rights to

due process because it would result in separate juries addressing individual issues. Appellees counter that this court has recognized that a bifurcated process of certifying a class to resolve preliminary, common issue, followed by a decertified process to resolve individual issues is consistent with Rule 23. We agree.

We recently addressed and rejected a party's argument that a bifurcated proceeding would result in a constitutional violation in *Bryant*, 374 Ark. at 52, 285 S.W.3d at 644, and stated:

> Nor does the possibility of bifurcation render the instant class certification unconstitutional. As we have previously held, we do not know at the point of certification whether more than one jury would ultimately be necessary, and we will not speculate on the question of the inevitability of bifurcated trials or issue an advisory opinion on an issue that well may not develop. *See, e.g., BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000).

Accordingly, there is no merit to Op-Tech's argument in this regard.

### 4. Superiority

Next, Appellants argue that reversal of the class-certification order is warranted because a class action is not the superior method for handling this matter. In this regard, Appellants contend that because numerous individual issues must be resolved on a case-by-case determination, a class action is not superior, and that this case is not manageable as a class action under the class-certification order. More specifically, Op-Tech argues that under the amended and substituted order, the trial court's determination that there will be a common trial, followed by a decertified phase of individual trials to determine damages, highlights its argument that this action is not manageable as a class action and magnifies the constitutional problems, specifically the violation of Appellants' right to due process.

Appellees argue that a class action is the superior method for handling this matter and that this court has never before required an explanation as to how a bifurcated proceeding complies with the superiority element. Appellees assert that most, if not all, issues will be resolved in the course of a common trial, and that only some class members will have additional damages claims that warrant an individual trial. Finally, Appellees contend that the circuit court has the ability to manage and guide the instant litigation.

■ Rule 23(b) requires "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Ark. R. Civ. P. 23(b). This court has repeatedly held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. See Johnson's Sales, 370 Ark. 387, 260 S.W.3d 273. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. Id. This court has further stated that when a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class. Bryant, 374 Ark. 38, 285 S.W.3d 634. Furthermore, the avoidance of multiple suits lies at the heart of any class action. Id.

Here, the trial court found that a class action was the superior method for proceeding because the common questions predominate and thus a class action was the most realistic means for disposing of a large number of claims arising out of the same event and based on the same operative facts. We disagree with Appellants that the trial court erred in this regard. Appellants' argument that there are many individual issues that will have to be decided on a case-by-case basis is simply not supported by the record. As we explained in Summons:

> The case-by-case mode of adjudication magnifies this burden by requiring the parties and courts to reinvent the wheel for each claim. The merits of each case are determined de novo even though the major liability issues are common to every claim arising from the mass tort accident, and even though they may have been previously determined several times by full and fair trials. These costs exclude many mass tort victims from the system and sharply reduce the recovery for those who gain access. Win or lose, the system's private law process exacts a punishing surcharge from defendant firms as well as plaintiffs.

306 Ark. at 126, 813 S.W.2d at 245 (quoting D. Rosenberg, Class Actions for Mass Torts: Doing Individual Justice by Collective Means, 62 Ind. L. Rev. 560 (1986-1987)).

Moreover, we disagree with Appellants' assertion that this case is not manageable as a class action. Rule 23 specifically contemplates the ability of the circuit court to decertify a class if it

becomes too unwieldy and states: "An order under this section may be altered or amended at any time before the court enters final judgment." Ark. R. Civ. P. 23(b). Finally, language from *Pearson*, 340 Ark. at 363, 10 S.W.3d at 845, is instructive on this issue:

> We have no hesitancy in placing the management of this class action in the trial court. That is what the rule contemplates, and, as already described, real efficiencies can be obtained by resolving common issues, both for the plaintiff class and the appellants. Were we, on the other hand, to speculate on class management or direct the trial court at this stage to present the parties with a management plan, we would be interfering in matters that clearly fall within the trial court's bailiwick.

Likewise, we recognize in the instant action that the trial court may proceed with this class action as it deems fit. Accordingly, we find no error in the trial court's ruling on the element of superiority.

### 5. Factual Findings

Teris argues that the certification order should be vacated because it includes factual findings that have never been made or even requested. Some of those findings related to (1) door-to-door notifications; (2) shifting winds; (3) radio broadcasts made; (4) opinions of a fire chief and a member of the Arkansas Geographic Information Office regarding reasonableness of any evacuation; and (5) a finding that every adult in the evacuation area "suffered at least one element of damage that was common to all." According to Teris, such findings were never requested and are not supported by the record.

We disagree with Teris's argument in this regard for two reasons. First, the record reveals that CSX actually filed a request for written findings of fact and conclusions of law. Moreover, Rule 23 requires a trial court to include specific findings and conclusions in a certification order. Second, Teris in advancing this argument simply provides a list of facts it deems is not supported by the record but fails to explain how the findings relating to those facts are deficient. It is well settled that we will not make a party's argument for them or consider an argument that is not properly developed. *See Hanks v. Sneed*, 366 Ark. 371, 235 S.W.3d 883 (2006).

## 6. *Exclusion of Some Claims*

Op-Tech argues that Appellees' plan to sacrifice the personal-injury and property-damage claims of class members in order to achieve certification is disingenuous and does not cure the defects in the certification order. In this regard, Teris argues that the amended and substituted order's provision excluding from the class "[a]ny person believing they suffered a permanent personal injury, or permanent diminution in the value of their real property" renders the class-certification order inconsistent, deficient, and that it should be voided. In support of their argument, Op-Tech relies on *Thompson v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999), a case where certification was denied after the named plaintiffs reserved certain personal injury and damages claims. Appellees counter that they have never proposed to represent anyone with a personal-injury claim, and more importantly, know of no one who claims to have suffered a personal injury as a result of the event at Teris.

■ There is no merit to Op-Tech's argument. Simply because this proposed class defines its members in a way that does not include people with personal injuries or permanent injuries does not render it inconsistent. Such people may pursue their own claims or be part of another class, which based on the hearing before the circuit court, appears to be the case. We reiterate that Rule 23 gives the trial court discretion to manage the class as it deems fit.

## 7. *Denial of a Jury Trial*

Op-Tech next argues that the amended order improperly denies it a jury trial on the strict-liability claim. In the amended order, the trial court stated that it, not a jury, would determine the issue of strict or absolute liability. Op-Tech argues that a claim based on a theory of strict-liability involves issues of fact that must be resolved by a jury. Thus, according to Op-Tech, the trial court's removal of the claim for strict liability from the jury's consideration is prejudicial and violates its Seventh Amendment right to a trial by jury. Appellees counter that it is the law in Arkansas that a trial court first determines whether the theory of strict liability applies, with a jury then deciding the issues of proximate causation and damages.

■ We are unable to address the merits of this point on appeal, as Op-Tech is raising this specific argument for the first time on appeal. A review of the record reveals that at the hearing

on the amended and substituted order, counsel for CSX objected to the submission of the amended and substituted order on the basis that it went beyond the clarification of the class definition. In so arguing, counsel mentioned, in passing, the strict-liability issue and his belief that this provision was not in the prior class-certification order. At no point in arguing before the circuit court did counsel for any of the Appellants specifically challenge that portion of the order stating that the trial court would determine the applicability of strict liability or claim that it was an incorrect statement of the law. As such, this argument is being raised for the first time on appeal and this court will not reach the merits of the argument. It is well settled that we will not consider arguments made for the first time on appeal. *Ark. Dep't of Human Servs. v. Huff,* 347 Ark. 553, 65 S.W.3d 880 (2002).

### 8. Reliance on Evacuation Map

As a final point, Op-Tech argues that the trial court's reliance on the evacuation map to define the class is insufficient to satisfy the requirements of Rule 23, as reliance on the map is too speculative to satisfy the numerosity requirement. Appellees counter that Op-Tech has failed to cite any binding authority in support of its argument on this point and thus should not be considered by this court. We agree. In advancing the instant argument, the only authority relied on by Op-Tech in support of its position is an unpublished federal district court case from Tennessee that has no precedential effect in this court. Thus, we decline to address the merits of this argument; there is no citation to binding authority, and this court will not develop a party's argument for it. *See, e.g., Hanks,* 366 Ark. 371, 235 S.W.3d 883.

Affirmed.