SLIP OPINION

Cite as 2015 Ark. 253

# SUPREME COURT OF ARKANSAS

No. CV–14–1033

GGNSC ARKADELPHIA, LLC D/B/A GOLDEN LIVING CENTER-ARKADELPHIA; GGNSC CAMDEN, LLC D/B/A GOLDEN LIVING CENTER-CAMDEN; GGNSC CROSSETT, LLC D/B/A GOLDEN LIVING CENTER-CROSSETT; GGNSC EL DORADO III, LLC D/B/A GOLDEN LIVING CENTER-EL DORADO; GGNSC HARRISON II, LLC D/B/A/ GOLDEN LIVING CENTER-HARRISON; GGNSC HEBER SPRINGS, LLC D/B/A/ GOLDEN LIVING CENTER-HEBER SPRINGS; GGNSC HILLTOP, LLC D/B/A/ GOLDEN LIVING CENTER-HILLTOP; GGNSC HOT SPRINGS, LLC D/B/A GOLDEN LIVING CENTER-PARK AVENUE; GGNSC MCGEHEE, LLC D/B/A GOLDEN LIVING CENTER-MCGEHEE; GGNSC MONTICELLO, LLC D/B/A GOLDEN LIVING CENTER-MONTICELLO; GGNSC NORTH LITTLE ROCK, LLC D/B/A GOLDEN LIVING CENTER-NORTH LITTLE ROCK; GGNSC ROGERS, LLC D/B/A/ GOLDEN LIVING CENTER-ROGERS; GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC HOLDINGS, LLC; GGNSC ADMINISTRATIVE SERVICES, LLC; GGNSC CLINICAL SERVICES, LLC; GOLDEN GATE ANCILLARY, LLC; GGNSC EQUITY HOLDINGS, LLC; LESLIE CAMPBELL; CINDY SUSIENKA; JAMES AVERY; ANDREA CLARK; DAVID MILLS; JULIANNE WILLIAMS; DAVID

**Opinion Delivered** June 4, 2015

APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT
[NO. CV–2011–121–6]

HONORABLE DAVID F. GUTHRIE, JUDGE

AFFIRMED.

STORDY; LARRY MCFADDEN;
ANGELA MARLAR; BILLIE
PALCULICT; SYBIL ADAMS; TROY
MORRIS; AVIE SINGLETON;
TRACEY BURLISON; MINCIE
THOMAS; TOMMY JOHNSTON;
JOHN MCPHERSON; LAURIE
HERRON; MARGARET GREEN;
NOREAN BAILEY; MARSHA
PARKER; AND LISA HENSLEY

APPELLANTS

V.

NELLIE R. LAMB, BY AND
THROUGH RICHARD WILLIAMS, AS
GUARDIAN OF THE ESTATE AND
PERSON OF NELLIE R. LAMB;
BETTY HUEBNER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF WILMA RICHEY, DECEASED;
GREG BROWN, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF LOUISE BROWN, DECEASED;
DIANNE ROCHE, AS ATTORNEY-
IN-FACT OF JAMIE ROCHE; LEON
ROBINSON, JR.; CLAUDE
HENDERSON AND RUBY
HENDERSON, AS CO-SPECIAL
ADMINISTRATORS OF THE ESTATE
OF LUCILLE HENDERSON,
DECEASED; LARRY NELSON, AS
SPECIAL ADMINISTRATOR OF THE
ESTATE OF GRACIE CAESAR;
PATRICIA FITE, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF LOIS DAVIS; JOHN TATUM, AS
SPECIAL ADMINISTRATOR OF THE
ESTATE OF LUE ELLA TATUM;
ROSIE WILLIAMS, AS SPECIAL

ADMINISTRATOR OF THE ESTATE
OF JACK WILLIAMS; ALBERT NEAL,
AS SPECIAL ADMINISTRATOR OF
THE ESTATE OF GLADYS NEAL;
LADONIA WRIGHT, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF ALMA ROGERS; ELSIE JENKINS,
AS SPECIAL ADMINISTRATOR OF
THE ESTATE OF ELMER TATUM;
DARLENE CARTER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF WARREN PORCHIA; LISA
ARMSTRONG, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF LOIS RICHARDSON; NADINE
BROWN, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF RUBY BARNETT; BETTY
ANDREWS, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF JIMMY ANDREWS; LEVERT
BRIGGS, JR., AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF HELEN BAILEY; HERMAN
LEVINGSTON, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF VELMA DAVIS; BESSIE TALLEY,
AS SPECIAL ADMINISTRATOR OF
THE ESTATE OF WILLIE TALLEY;
GENEVA ODEMS, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF BERNELL MORTON; LINDA
JACINTHO, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF EDNA FINK; PEGGY S. DICKEY,
AS SPECIAL ADMINISTRATOR OF
THE ESTATE OF LOUIS E. LAY;
ELAINE FISHER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF WALTER LEE BEASLEY; YURI
SHEARER, AS SPECIAL

3

ADMINISTRATOR OF THE ESTATE
OF ALMA M. SHEARER; DOROTHY
TACKETT, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF EDNA RABY; KAREN SHELTON,
AS SPECIAL ADMINISTRATOR OF
THE ESTATE OF FAYE CLAYTON;
DEBORAH JONES, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF JAMES H. WASSON; JACK
NOLEN, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF VERA C. NOLEN; MARY
LIVINGSTON, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF ROY LIVINGSTON; CLARISSA
CARMACK, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF TROY THRASH; MERRY
SIMPSON, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF LUMMIE FRYAR; DEBBIE
NIMMER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF ARETHA STEWARD; RANDY
MITCHELL, AS ATTORNEY-IN-FACT
OF MILDRED MITCHELL; JOHN
SLAUGHTER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF FRANK PROVINCE, JR.; ROBERT
GRAGG, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF ROBERT MACKON; BETTY SISK,
AS ATTORNEY-IN-FACT OF AZZLE
WILLIAMS; RAY SMALLING, AS
SPECIAL ADMINISTRATOR OF THE
ESTATE OF THELMA SMALLING;
ROGER HARNISH AND RHONDA
HARNISH, AS CO-SPECIAL
ADMINISTRATORS OF THE ESTATE
OF VERNA HARNISH; TOMMIE

KEENER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF DORIS KEENER; VIVIAN
STUART, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF WILLIE SHEPPARD; POLLY
REDMOND, AS ATTORNEY-IN-
FACT OF NOVIE D. GASAWAY; SARA
BOND, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF IRMA WHARTON; BARBARA
WEAVER, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF SYLVIA WILSON; AND ON
BEHALF OF THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED
APPELLEES

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellants GGNSC Arkadelphia, LLC d/b/a/ Golden Living Center–Arkadelphia, and others, bring this interlocutory appeal from the order entered by the Ouachita County Circuit Court certifying a class action filed by appellees Nellie R. Lamb, by and through Richard Williams, as guardian of the estate and person of Nellie R. Lamb, and others. For reversal, appellants contend that appellees did not meet their burden of proving the predominance of common issues for the certification of the class. They also argue that class adjudication is neither efficient nor fair and that the class definition is flawed. We affirm the circuit court's decision.

*I. Factual Background*

The appellants in this case are twelve nursing-home facilities doing business as Golden

5

Living Centers in cities throughout the State of Arkansas.[1] Appellants also include alleged related entities and various officers, directors, administrators, and persons allegedly serving in leadership positions. Appellees, who are former residents of the nursing homes or special administrators, guardians, or attorneys-in-fact of former residents, brought this class-action suit against appellants in the Circuit Court of Ouachita County. In a second amended complaint, appellees individually, and on behalf of all residents of the Golden Living Centers from December 2006 to July 1, 2009, alleged that appellants breached their statutory and contractual obligations by failing to properly staff the facilities and by failing to meet minimum staffing requirements. Specifically, appellees asserted that the alleged practice of chronically understaffing the nursing homes breached the facilities' standard admission agreement and violated the Arkansas Long-Term Care Residents' Rights Act (Residents' Rights Act). Based on the alleged violation of the Residents' Rights Act, they also presented a claim under the Arkansas Deceptive Trade Practices Act (ADTPA). Appellees sought punitive damages and compensation for an array of injuries arising from the loss of dignity, the deprivation of residents' rights, poor hygiene, filthy living conditions, foul odors, the delivery of cold food, as well as damages for other injuries including pressure sores, malnutrition, dehydration, infection, bone fractures, falls, concussions, lacerations, and medical errors.

Following the initial complaint and also after filing the second amended complaint,

---

[1]The facilities are located in Arkadelphia, Camden, Crossett, El Dorado, Harrison, Heber Springs, Hot Springs, McGehee, Monticello, North Little Rock, and Rogers.

SLIP OPINION

appellees moved for class certification of the three claims. Appellants opposed the motions, and the parties briefed the contested issues. After conducting two hearings, the circuit court entered an order granting class certification on July 11, 2014. The court defined the class as,

> All residents and estates of residents who resided at the Golden Living nursing homes in Arkansas from December 2006, through July 1, 2009. Excluded from the Class are (1) residents that have sued in the past or presently have lawsuits pending against any of the Defendants except the plaintiffs named herein; (2) all present and former employees, officers, directors, of Defendants; (3) any Class Member who timely elects to be excluded from the class; and (4) any employee of the Circuit Court of Ouachita County, Arkansas, or any officer of any court presiding over this action.

In its order, the court noted that the class exceeded 3,400 residents. Further, the circuit court found that commonality was established because the central issue affecting both the named plaintiffs and the putative class is whether appellants' alleged business practice of chronically understaffing the nursing homes breached the standard admission agreement and violated the Residents' Rights Act, as well as the ADTPA. In particular, the circuit court found that the issues common to all class members included,

> A. Whether Defendants' standard admission agreement imposes minimum staffing requirements;
>
> B. Whether Ark. Code Ann. § 20-10-1201, et seq. imposes minimum staffing requirements;
>
> C. Whether Defendants failed to meet the minimum staffing requirements of Ark. Code Ann. § 20-10-1201, et seq., and the Defendants' standard admission agreement;
>
> D. Whether failure to meet the minimum staffing requirements breaches the standard admission agreement;
>
> E. Whether failure to meet minimum staffing requirements violates Ark. Code Ann. § 20-10-1201 et seq.;

F. Whether failure to meet minimum staffing requirements of Ark. Code Ann. § 20-10-1201 et seq., is a violation of the Arkansas Deceptive Trade Practices Act; and

G. Whether Leslie Campbell, Cindy Susienka, James Avery, Andrea Clark, David Mills, Julianne Williams, David Stordy, Larry McFadden, Angela Marlar, Billie Palculict, Sybil Adams, Troy Morris, Avie Singleton, Tracey Burlison, Mincie Thomas, Tommy Johnston, John McPherson, Laurie Herron, Margaret Green, Noreen Bailey, Marsha Parker, and Lisa Hensley are control persons as defined in Ark. Code Ann. § 4-88-113(d)(1) and therefore jointly and severally liable for the damages suffered by the plaintiff class.

Based on this court's precedent in *Beverly Enterprises-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007), the circuit court found that the issues common to the class predominated over any individual issues and that the element of superiority was satisfied. The court also determined that appellees established the requirements of typicality and adequacy. Finally, the circuit court concluded that the class definition was sufficient. Appellants bring this interlocutory appeal from the circuit court's order, as permitted by Arkansas Rule of Appellate Procedure–Civil 2(a)(9).

## II. Standards of Review

At the outset, we note that class certification of a lawsuit is governed by Rule 23 of the Arkansas Rules of Civil Procedure. Circuit courts are given broad discretion in matters regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's decision. *Teris, LLC v. Golliher*, 371 Ark. 369, 266 S.W.3d 730 (2007). Our focus

is "whether the requirements of Rule 23 are met," and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Philip Morris Cos. v. Miner*, 2015 Ark. 73, at 3, ___ S.W.3d ___, ___ (quoting *Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 9, 186 S.W.3d 705, 710 (2004)). Stated another way, "we will not delve into the merits of the underlying claims when deciding whether the Rule 23 requirements have been met." *Id.* (quoting *Nat'l Cash Inc. v. Loveless*, 361 Ark. 112, 116, 205 S.W.3d 127, 130 (2005)).

Our law is well settled that the six requirements for class-action certification, as stated in Rule 23, are (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008). In addition to the requirements of Rule 23, the court must be able to objectively identify members of the class. *Farmers Ins. Co. v. Snowden*, 366 Ark. 138, 233 S.W.3d 664 (2006).

## III. Predominance

As their primary issue on appeal, appellants contend that the circuit court abused its discretion by finding that the issues common to the class predominate over individual issues. In this regard, appellants assert that the questions of causation and injury are foundational elements of all the claims and that class certification is improper because these issues must be resolved on an individual basis. They maintain that for each claim, whether it be the alleged breach of admission agreement or alleged violations of the Residents' Rights Act and the ADTPA, appellees must prove a causal connection between the allegation of understaffing and

any resulting injury. Appellants contend that the experiences and injuries of the residents are varying and that individualized proceedings will be necessary to determine if any alleged injury was proximately caused by understaffing. In making this argument, appellants rely on the affidavit of Elaine Townsley, a registered nurse who is familiar with staffing requirements of long-term-care facilities. She averred that "not all residents are affected the same by a facility's failure to meet minimum staffing requirements for a particular shift" and that some residents may "suffer no injury as a result of this failure to meet minimum staffing requirements."

Rule 23(a)(2) provides that a representative party may sue on behalf of a class only if there are "questions of law or fact common to the class." "When the party opposing the class has engaged in some conduct afflicting a group that gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Faigin v. Diamante*, 2012 Ark. 8, at 5, 386 S.W.3d 372, 376. Rule 23(b) requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]" Predominance is a more stringent requirement than commonality. *United Am. Ins. Co. v. Smith*, 2010 Ark. 468, 371 S.W.3d 685. This court has explained that the starting point in examining the predominance issue is whether a common wrong has been alleged against the defendant. *Diamante v. Dye*, 2013 Ark. 501, 430 S.W.3d 710. If a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied, even if the circuit court must subsequently determine individual damage issues in bifurcated proceedings. *DIRECTV*

*v. Murray*, 2012 Ark. 366, 423 S.W.3d 555. We have recognized that a bifurcated process of certifying a class to resolve preliminary, common issues and then decertifying the class to resolve individual issues, such as damages, is consistent with Rule 23. *Id*. Thus, this court has observed that the question becomes whether there are overarching issues that can be addressed before resolving individual issues. *Hotels.com, L.P. v. Pine Bluff Advertising & Promotion Comm'n*, 2013 Ark. 392, 430 S.W.3d 56. However, if preliminary issues are individualized, then the predominance requirement is not satisfied. *Johnson's Sales Co. v. Harris*, 370 Ark. 387, 260 S.W.3d 273 (2007). Indeed, this court has observed that a case which presents numerous individual issues regarding the defendants' conduct, causation, injury, and damages will best be resolved on a case-by-case basis. *Baker v. Wyeth-Ayerst Lab. Div.*, 338 Ark. 242, 992 S.W.2d 797 (1999).

In *Thomas*, *supra*, the plaintiffs pursued a class–action suit against a nursing home located in Batesville. The complaint asserted that, pursuant to the facility's admission agreement, as well as the Residents' Rights Act, the nursing home was obligated to take care of the residents' basic daily needs and that the nursing home had failed to meet this obligation by neglecting to properly and adequately staff the facility. The circuit court granted class certification, finding that the common issues predominated over individual ones. On appeal, the nursing home argued that the circuit court erred by certifying the class because the identified questions of fact could not be resolved without a detailed examinations of the individual circumstances of each class member and because the predominant issues raised involved only individualized issues of liability, causation, and the existence and extent of

injury for each class member. This court rejected the nursing home's argument and affirmed

the class-certification order, holding as follows:

> We conclude that one main and preliminary overarching issue does exist
> in this case, which is whether the Batesville nursing facility was chronically
> understaffed so as to violate the residents' statutory and contractual rights. In its
> order, the circuit court found thirteen questions of fact and law and five issues
> that must be resolved, which are common to all class members. The five issues
> all involved understaffing. The court then found that the common factual and
> legal issues predominated over the individual issues because all residents relied
> upon the same Resident Admission Agreement and statutory law to assert that
> systemic understaffing resulted in undignified living conditions for the residents,
> which breached that agreement and violated state law. The circuit court
> recognized that once these predominating issues were resolved, the class could
> be decertified, if necessary, to determine individual restitution and damage
> issues for class members for breach-of-contract and statutory violations.
>
> We hold that the circuit court did not abuse its discretion in determining
> that the overarching issue of understaffing is common to the class and may be
> resolved before individual issues of damages must be addressed. The
> predominance criterion is satisfied in this case.

*Thomas*, 370 Ark. at 318, 259 S.W.3d at 450.

Here, appellants acknowledge that in *Thomas* we rejected essentially the same

arguments appellants raise in the instant appeal. However, they contend that the circuit court

misplaced its reliance on *Thomas* in light of subsequent case law. Appellants assert that the law

as it has been developed since *Thomas* precludes class certification where causation and injury

are foundational elements to a determination of liability and where there is no one set of

operative facts to establish a defendant's liability to the class members. Specifically, appellants

suggest that the holding in *Thomas* has been eroded by the decisions in *Bedell v. Williams*, 2012

Ark. 75, 386 S.W.3d 493, *Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347

S.W.3d 1, and *Union Pacific Railroad v. Vickers*, 2009 Ark. 259, 308 S.W.3d 573.

In *Bedell*, this court held that causation is an element necessary for the recovery of damages under the Residents' Rights Act and that the circuit court erred by not including the element of causation in the jury instructions. In *Hernandez*, the circuit court denied certification of a subclass of apartment dwellers who asserted tort claims arising from carbon monoxide exposure allegedly caused by the flawed design of HVAC and hot-water systems in the apartment complex. We affirmed that decision on the basis that proximate causation is a "foundational element" of the asserted torts of strict liability, negligence, wrongful death, and outrage. *Hernandez*, 2009 Ark. 480, at 31, 347 S.W.3d at 19. In so holding, we reasoned that the plaintiffs could not establish liability without addressing the individualized issues of proximate causation, which involved a consideration of the extent of exposure to carbon monoxide and how that exposure caused damage to the putative class members. Similarly, in *Vickers*, this court reversed the certification of a class where the alleged wrongdoing involved allegations that the railroad had engaged in settlement practices that violated the ADTPA and that constituted the illegal practice of law. We determined that class certification was improper because the railroad's settlement practices differed from class member to class member, such that there was no common pattern of facts to establish liability. Because there was "no one set of operative facts" to establish liability, we deemed certification inappropriate. *Vickers*, 2009 Ark. 259, at 19, 308 S.W.3d at 582.

Contrary to appellants' assertion, this court broke no new ground in either *Hernandez* or *Vickers*. In each case, we referred to our decision in *Baker*, *supra*, a mass-tort action filed against manufacturers, suppliers, and distributors of certain diet drugs, alleging claims for

13

negligence, products liability, failure to warn, and breach of warranties. The plaintiffs in that case argued the predominance of common issues, such as whether the diet drugs were defective products and whether the defendants gave adequate warning of the risks associated with taking diet drugs. However, the circuit court denied class certification. This court affirmed, holding that "this case presents numerous individual issues that go to the heart of the defendants' conduct, causation, injury, and damages such that the defendants' liability as to each plaintiff will have to be resolved on a case-by-case basis." *Baker*, 338 Ark. at 249, 992 S.W.2d at 801. We further observed that the amount or combination of diet drugs a plaintiff took, combined with his or her personal medical history, might make the drugs dangerous for one party and not for another. We also commented that "the only thing the plaintiffs have in common is that they all took one or a combination of the diet drugs listed in the complaint." *Id*.; *see also Mittry v. Bancorpsouth Bank*, 360 Ark. 249, 200 S.W.3d 869 (2005) (holding that individualized questions concerning the defendant's responsibility for diminished sales prices of class members' bonds predominated over any common questions, rendering class certification inappropriate).

The common thread in *Hernadez*, *Vickers*, and *Baker* is that in each of those cases there was no overarching issue common to the class that would establish the defendants' liability. Instead, the defendants' liability depended on an examination of facts that were peculiar to each class member. By contrast here, there are core issues common to each class member on the issues of liability concerning (1) whether appellants had a duty to provide appropriate staffing pursuant to the admission agreement and the Residents' Rights Act; (2) whether a

violation of the residents' rights establishes liability under the ADTPA, and (3) whether appellants failed to meet the statutory and contractual obligations by chronically understaffing the facilities. Answering these common questions has the capacity to "reveal the possibility for a claim against [appellants], or wipe out the possibility of a claim for every class member." *Snowden*, 366 Ark. at 149–50, 233 S.W.3d at 672. Thus, we disagree with appellants' argument that the issue of causation and varying fact patterns are sufficient to defeat class certification under these circumstances.

Furthermore, our decision in *Thomas* stands on solid footing as reflected in both prior and subsequent case law. Before that decision, we had observed that there is a distinction between the individualized issues of recovery and common issues of a defendant's overall liability:

> Challenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.

*SEECO, Inc. v. Hales*, 330 Ark. 402, 413, 954 S.W.2d 234, 249 (1997) (citing 1 Herbert B. Newberg, Newberg on Class Actions § 4.26 (3d ed. 1992)); *see also Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008). Since the decision in *Thomas*, "we have said time and time again, the mere fact that individual issues or defenses may be raised regarding the *recovery* of individual class members cannot defeat class certification where there are common questions that must be resolved for all class members." *Hotels.com*, 2013 Ark. 392, at 14, 430 S.W.3d at 64 (emphasis supplied); *see also Kersten v. State Farm Mut. Auto. Ins. Co.*, 2013 Ark. 124, 426 S.W.3d 455; *Ark. Media, LLC v. Bobbitt*, 2010 Ark. 76, 360 S.W.3d 129;

*Rosenow v. Alltel Corp.*, 2010 Ark. 26, 358 S.W.3d 879; *Vickers, supra*; *The Money Place, LLC v. Barnes*, 349 Ark. 518, 78 S.W.3d 730 (2002). Stated another way, predominance does not fail simply because there are individual issues that may arise; the central question to be resolved by the circuit court is whether there are overarching issues that can be addressed before resolving individual issues. *FirstPlus Home Loan Owner 1997-1 v. Bryant*, 372 Ark. 466, 277 S.W.3d 576 (2008).

Given the distinction we have drawn between individualized issues of liability and ultimate recovery, it is apparent that appellants have taken out of context our observations in *Hernandez* that causation is a foundational element of tort liability and in *Vickers* that class treatment is inappropriate when there is no one set of operative facts to establish liability. In those cases, the element of predominance was not satisfied because liability could not be established without individualized inquiry. In other cases, like *Thomas*, class certification may be proper when issues of liability are common to the class and predominate over individualized issues regarding a class member's right to recover damages. When we apply our precedents here, the common, overarching issues concern whether appellants have liability for chronic understaffing under the admission agreement and the asserted statutes. These central issues can be decided on a classwide basis, and they manifestly predominate over individual issues concerning a class member's right to recovery, which can be determined in bifurcated proceedings. The circuit court did not abuse its discretion in concluding that the element of predominance was satisfied based on the common issues of establishing liability.

Appellants also contend that predominance is defeated because five of the forty-three

named class representatives and some of the putative class members may have entered into optional arbitration agreements. Citing *Sanders v. Robinson Humphrey/American Express, Inc.*, 1986 WL 10096, at *6 (N.D. Ga. 1986), appellants argue that the existence of arbitration agreements with a substantial number of class members provides another individual issue that predominates over common issues. In *Sanders*, class certification was denied because virtually all of the putative class members had entered into an arbitration agreement. While there might be an occasion where the number of class members subject to an arbitration agreement could militate against class treatment, appellants fail to persuade us that this individualized issue predominates in this case. On this record, we cannot conclude that a significant number of class members have agreed to arbitration so as to override the certification of the class.

In addition, appellants assert that class treatment is inappropriate regarding the claim that is based on the admission agreement. They argue that preliminary issues of whether each class member had a contract with appellants and whether those contracts were standard, identical, or substantially similar must be resolved before it can be determined whether any such agreement was breached. We cannot agree. Throughout the proceedings, appellees maintained that appellants used a standard admission form at each facility. Appellees based this assertion on representations made by appellant Leslie Campbell, a ranking corporate officer of the facilities. Although appellants disputed this assertion by presenting evidence of other admission agreements, the circuit court did not abuse its discretion, as the court could rely on the representation made by Campbell. Moreover, appellants have failed to demonstrate that these other agreements are materially different from the standard admission agreement

SLIP OPINION

submitted by appellees.

### IV. Superiority

In challenging the circuit court's superiority finding, appellants continue to assert that individual issues dominate those common to the class. They maintain that the bifurcated process is not feasible in this case because a phase-one class proceeding focused on the question of understaffing at twelve different facilities over a two-and-one-half-year period covering 944 days and 32,031 unique shifts makes the class approach unworkable. They contend that, because it is necessary to determine injury, causation, and damages on an individual basis after decertification, the determination of understaffing will create practical difficulties for the circuit court in managing the case as a class action.

This court has repeatedly held that the superiority requirement is satisfied if class certification is the more efficient way of handling the case and is fair to both sides. *Rosenow*, *supra*. The avoidance of multiple suits lies at the heart of any class-action decision. *Id*. Furthermore, where a cohesive and manageable class exists, we have often held that "real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for a trial on individual issues, if necessary." *Snowden*, 366 Ark. at 150, 233 S.W.3d at 672.

Also, this court has repeatedly recognized that conducting a trial on the common issue in a representative fashion can achieve judicial efficiency. *Bryant*, *supra*. Furthermore, we have routinely stated that the bifurcated process of class actions is consistent with Rule 23(d), which allows the circuit court to enter orders necessary for the appropriate management of the class

action. *Id.*

We hold that the circuit court did not abuse its discretion in finding that the class-action approach is a superior method for resolving the question of appellants' liability. As we said in *Thomas*, "[t]he most efficient way to handle this case is to certify a class to determine the issue of whether Beverly systematically and chronically understaffed the Batesville nursing facility and then to decertify the class, if necessary, to determine individual restitution and damage claims as well as any defenses in separate proceedings." *Thomas*, 370 Ark. at 320, 259 S.W.3d at 451–52. The same is true here. Determining the central questions whether understaffing creates contractual or statutory liability and whether chronic understaffing occurred are more efficiently handled in a single proceeding. Otherwise, there exists the possibility of a multiplicity of suits across the state with the potential that circuit courts may reach inconsistent results. *See Summons v. Missouri Pac. R.R.*, 306 Ark. 116, 813 S.W.2d 240 (1991) (holding that the repeated litigation of the liability question and the possibility of inconsistent results outweighed the fact that each claimant would have different evidence regarding damages). We also do not agree that efficiency is compromised because the class action covers twelve facilities. As appellants have acknowledged, the facilities are required to submit a written report of all shifts that fail to meet minimum staffing requirements. *See* Ark. Code Ann. § 20-10-1407 (Repl. 2014). Therefore, the determination of understaffing is not unmanageable simply because twelve facilities are involved. We see little to be gained by requiring, as appellants' argument would suggest, class-action suits for each facility. The promotion of judicial economy is best served by a single proceeding rather than twelve

separate class actions.  We affirm on this point.

## V.  Class Definition

As their final point on appeal, appellants contend that the class definition is fatally overbroad and imprecise because it does not limit the class to members who suffered an injury and sustained damages as a result of understaffing.  This argument is decidedly without merit.

Before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.  *Baptist Health v. Hutson*, 2011 Ark. 210, 382 S.W.3d 662.  The class must first be susceptible to precise definition to ensure that the class is neither "amorphous," nor "imprecise."  *Ferguson v. Kroger Co.*, 343 Ark. 627, 632, 37 S.W.3d 590, 593 (2001).  Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.  *Hutson*, *supra*.

Appellants misstate our case law as requiring that a class must be defined to limit membership only to those who have sustained actual harm.  What we have said, many times, is that "[c]learly defining the class ensures that those people who are actually harmed by a defendant's wrongful conduct will participate in the relief ultimately awarded."  *Hutson*, 2011 Ark. 219, at 5, 382 S.W.3d at 667; *see also United Am. Ins. Co.*, *supra*; *Teris, LLC v. Chandler*, 375 Ark. 70, 289 S.W.3d 63 (2008); *Golliher*, *supra*; *State Farm Fire & Casualty Co. v. Ledbetter*, 355 Ark. 28, 129 S.W.3d 815 (2003); *Ark. Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002); *Ferguson*, *supra*.  Ensuring the participation of all those who have been harmed does not translate into a requirement that the definition must include an element of

actual harm. On the contrary, it would be improper to define a class by reference to actual injury because this would require a determination of the merits of a putative class member's claim. However, neither the circuit court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *Sw. Bell Yellow Pages, Inc. v. Pipkin Enters., Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004) (reversing class definition that required delving into the merits of the case). Accordingly, we find no abuse of discretion in the circuit court's definition of the class.

Affirmed.

HART and WOOD, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority observes that if a case involves preliminary, common issues of liability and wrongdoing that affect all class members, the predominance requirement of Rule 23 is satisfied and that the question becomes whether there are overarching issues that can be addressed before resolving individual issues. Here, the majority concludes that there are core issues common to each class member on the issues of liability concerning (1) whether appellants had a duty to provide appropriate staffing pursuant to the admission agreement and the Residents' Rights Act, (2) whether a violation of the residents' rights establishes liability under the Arkansas Deceptive Trade Practices Act, and (3) whether appellants failed to meet the statutory and contractual obligations by chronically understaffing the facilities.

Thus, rather than asking whether the members of the class have preliminary common issues that predominate, the majority instead considers the more abstract question of whether

there exists a newly fashioned cause of action by which a person might seek recourse for any liability and wrongdoing. In doing so, it permits class certification by resort to abstract questions.

The proper approach is that seen in *Union Pacific Railroad v. Vickers*, 2009 Ark. 259, 308 S.W.3d 573, where there was "'no one set of operative facts'" that established liability to any given class member." *Id*. at 19, 308 S.W.3d at 582–83 (citation omitted). In *Vickers*, despite the parties' disagreement over the elements of the underlying cause of action, the court, *arguendo*, assumed nevertheless that "there are questions that are common to all class members and that would give rise to a cause of action," but then concluded that "it cannot be said that any such common issues predominate over individual ones." *Id*. at 14–15, 308 S.W.3d at 580–81. Contrary to *Vickers*, the majority instead posits the question whether a cause of action might theoretically exist as the predominating issue. However, as in *Vickers*, even assuming there is such a cause of action, there is no one set of operative facts to establish liability to any given class member, as the claim of each class member would be an individualized inquiry into whether any particular understaffing was the proximate cause of any injury. Thus, as in *Vickers*, there is no common question of law or fact that predominates over the questions affecting only individual class members. Further, I note that questions relating to staffing and the attendant penalties for understaffing are clearly set out in our statutory law. Ark. Code Ann. §§ 20-10-1401 to -1410 (Repl. 2014).

Thus, I respectfully dissent.

WOOD, J., joins in this dissent.

*Hardin, Jesson & Terry, PLC*, by: *Kirkman T. Dougherty*, *Jeffrey W. Hatfield*, and *Kynda Almefty*; *Dechert, LLP*, by: *H. Joseph Escher III*; and *Eugene Bramblett*, for appellant.

*Campbell Law Firm, P.A.*, by: *H. Gregory Campbell*; *Ludwig Law Firm, PLC*, by: *Gene A. Ludwig*; and *Reddick Moss, PLLC*, by: *Brian D. Reddick*, for appellees.