# SUPREME COURT OF ARKANSAS

**No.** CV-16-584

|  |  |
|---|---|
| ROBINSON NURSING AND REHABILITATION CENTER, LLC, D/B/A ROBINSON NURSING AND REHABILITATION CENTER; CENTRAL ARKANSAS NURSING CENTERS, INC.; NURSING CONSULTANTS, INC.; AND MICHAEL MORTON<br><br>APPELLANTS<br><br>V.<br><br><br>ANDREW PHILLIPS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DOROTHY PHILLIPS, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF DOROTHY PHILLIPS; AND ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED<br><br>APPELLEES | **Opinion Delivered** May 4, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-14-4568]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><u>AFFIRMED IN PART; REVERSED AND REMANDED IN PART</u>. |

**KAREN R. BAKER, Associate Justice**

Appellants Robinson Nursing and Rehabilitation Center, LLC, d/b/a Robinson Nursing and Rehabilitation Center; Central Arkansas Nursing Centers, Inc.; Nursing Consultants, Inc.; and Michael Morton (collectively "Robinson") bring an interlocutory appeal of the Pulaski County Circuit Court's order certifying a class action filed by appellees Andrew Phillips, as personal representative of the estate of Dorothy Phillips, and others (collectively "Phillips"). Dorothy Phillips was a resident of Robinson from approximately

August 19, 2013, until February 22, 2014. On appeal, Robinson argues that Phillips did not meet his burden of proving commonality, predominance, typicality, and superiority. Robinson also argues that the class definition is overbroad. We affirm the circuit court's order in part and reverse and remand in part.

*Facts and Procedural History*

On September 4, 2015, Phillips filed his first amended class-action complaint alleging that Robinson's business practice of chronic understaffing breaches the admission agreement and provider agreement, violates the Arkansas Deceptive Trade Practices Act ("ADTPA"), constitutes negligence and civil conspiracy, and unjustly enriches Robinson. Phillips sought compensatory, economic and punitive damages, attorney's fees, interest, and costs. On September 10, 2015, Phillips filed his amended motion for class certification. Phillips argued that the class-certification issue before the circuit court was controlled by *GGNSC Arkadelphia, LLC v. Lamb*, 2015 Ark. 253, 465 S.W.3d 826. In *Lamb*, this court affirmed the certification of contractual and statutory claims against GGNSC in which the plaintiff residents alleged that GGNSC failed to properly and adequately staff its facilities.

On September 24, 2015, Robinson filed its answer to Phillips's first amended class-action complaint, and on September 28, 2015, Robinson filed its response to Phillips's motion for class certification. Robinson argued that class certification was inappropriate in the present case and that Phillips's motion for class certification should be denied. Specifically, Robinson argued that the claims and issues in the present case differ significantly from those presented in *Lamb* because the *Lamb* plaintiffs did not assert claims for negligence and unjust enrichment.

On October 13, 2015, Phillips filed his reply and on October 20, 2015, Robinson filed its

sur-reply.

After conducting a hearing on March 4, 2016, the circuit court entered an order

granting class certification. The circuit court defined the class as

> [a]ll residents and estates of residents who resided at the Robinson Nursing and
> Rehabilitation Center from June 11, 2010, to present. Excluded from the Class are
> (1) residents that have sued in the past or presently have lawsuits pending against any
> of the Defendants except the plaintiffs named herein; (2) all present and former
> employees, officers, directors, of Defendants; (3) any Class Member who timely elects
> to be excluded from the class; and (4) any employee of the Circuit Court of Pulaski
> County, Arkansas, or any officer of any court presiding over this action.

The circuit court found that the common questions as to the class members include but are

not limited to:

a. Whether the standard Admission Agreement required the Facility to have
sufficient staff to meet the care needs of the residents as required by state and
federal laws and regulations.

b. Whether Ark. Code Ann. §§ 20-10-201, et seq. imposes minimum staffing
requirements requiring the Facility to have sufficient staff to meet the care
needs of the residents.

c. Whether Defendants failed to meet the minimum staffing requirements of Ark.
Code Ann. §§ 20-10-1201, et. seq., and the Defendants' admission agreement
by failing to provide sufficient staff to meet the care needs of the residents.

d. Whether failure to meet the minimum staffing requirements required by state
and federal laws and regulations breaches the Defendants' admission agreement,
Ark. Code Ann. § 20-10-1201, et. seq., and the Arkansas Deceptive Trade
Practices Act.

e. Whether chronically understaffing the Facility in violation of state and federal
laws and regulations is an unconscionable business practice in violation of the
Arkansas Deceptive Trade Practices Act.

f. Whether the Defendants owed a legal duty to the residents to staff the Facility

3

in compliance with state and federal laws and regulations;

g.      If so, whether the Defendants' breach of their duty to adequately staff the Facility in compliance with state and federal laws regulations;

h.      Whether failure to staff the Facility in compliance with state and federal laws and regulations is a breach of the provider agreement;

i.      Whether the admission agreement's failure to disclose the Facility's history of understaffing is an omission or concealment which constitutes a violation of the Arkansas Deceptive Trade Practices Act;

j.      Whether the Defendants were unjustly enriched;

k.      Whether the Defendants engaged in a civil conspiracy to understaff the Facility in violation of state and federal laws and regulations; and[1]

l.      Whether Michael Morton and the entity Defendants are control persons as defined in Ark. Code Ann. [§] 4-88-113(d)(1) and therefore jointly and severally liable for the damages suffered by the Plaintiff Class for the Defendants' deceptive trade practices.

Citing to this court's precedent in *Lamb*, *supra*, and *Beverly Enterprises-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 259 S.W.3d 445 (2007), the circuit court found that the common issues predominated over the individual issues.  The circuit court also found that the requirements of numerosity, typicality, superiority, and adequacy were satisfied.  Finally, the circuit court found that the class definition was proper and not overbroad.

Robinson now brings its timely interlocutory appeal from the circuit court's order granting class certification pursuant to Rule 2(a)(9) of the Arkansas Rules of Appellate Procedure–Civil.

---

[1]The parties do not address the civil-conspiracy claim on appeal.

4

*Standard of Review*

An interlocutory appeal may be taken from an order certifying a case as a class action in accordance with Rule 23 of the Arkansas Rules of Civil Procedure. Circuit courts are given broad discretion in matters regarding class certification, and we will not reverse a circuit court's decision to grant or deny class certification absent an abuse of discretion. *ChartOne, Inc. v. Raglon*, 373 Ark. 275, 283 S.W.3d 576 (2008). When reviewing a circuit court's class-certification order, this court reviews the evidence contained in the record to determine whether it supports the circuit court's decision. *Teris, LLC v. Golliher*, 371 Ark. 369, 266 S.W.3d 730 (2007). Our focus is "whether the requirements of Rule 23 are met," and "it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action." *Philip Morris Cos. v. Miner*, 2015 Ark. 73, at 3, 462 S.W.3d 313 (quoting *Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 9, 186 S.W.3d 705, 710 (2004)).

*Class Certification*

On appeal, Robinson argues that the present case is fundamentally different from the certification issues presented in *Lamb*, *supra*, and *Thomas*, *supra*. Further, Robinson argues that Phillips has failed to meet his burden of proof under Rule 23 of the Arkansas Rules of Civil Procedure. Specifically, Robinson argues that Phillips has failed to prove (1) commonality, (2) predominance, (3) typicality, and (4) superiority. Finally, Robinson contends that the class definition is overbroad.

Rule 23 of the Arkansas Rules of Civil Procedure governs class actions and class certification. The rule provides, in pertinent part:

(a)     Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties and their counsel will fairly and adequately protect the interests of the class.

(b)     Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Therefore, there are six requirements for class-action certification, as stated in Rule 23: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, (5) predominance, and (6) superiority. *Gen. Motors Corp. v. Bryant*, 374 Ark. 38, 285 S.W.3d 634 (2008). In addition to the requirements of Rule 23, the court must be able to objectively identify members of the class. *Farmers Ins. Co. v. Snowden*, 366 Ark. 138, 233 S.W.3d 664 (2006).

I.  *Breach of Contract, ADTPA, & Unjust-Enrichment Claims*[2]

On appeal, Robinson argues that the circuit court abused its discretion in finding that the commonality and predominance requirements of Rule 23 had been met.  As to the breach-of-contract, ADTPA, and unjust-enrichment claims, for the reasons stated in *Lamb*, we disagree.

A.  Commonality & Predominance

We now turn to the specific requirements of class certification.  To certify a class, the

_____

[2]Phillips's unjust-enrichment claim is intertwined with his breach-of-contract and ADTPA claims.  Accordingly, these three claims will be addressed together.

circuit court must determine that "there are questions of law or fact common to the class."

Ark. R. Civ. P. 23(a)(2). The commonality requirement is always case specific and

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the rule 23(a)(2) prerequisite is . . . that there need be only a single issue common to all members of the class . . . When the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected.

*Union Pac. R.R. v. Vickers*, 2009 Ark. 259, at 8–9, 308 S.W.3d 573, 578 (quoting Herbert B.

Newberg, *Newberg on Class Actions* § 3.10 (3d ed. 1993)). The circuit court "must determine

what elements in a cause of action are common questions for the purpose of certifying a

class," and commonality is satisfied where "the defendant's acts, independent of any action by

the class members, establish a common question relating to the entire class." *Id*. at 9, 308

S.W.3d at 578 (quoting *Williamson v. Sanofi Winthrop Pharms., Inc.*, 347 Ark. 89, 97, 60

S.W.3d 428, 433 (2001)).

Once commonality is determined when deciding whether to certify a class, the next

question is whether common questions of law and fact predominate over any questions

affecting only individual members. *Rosenow v. Alltel Corp.*, 2010 Ark. 26, 358 S.W.3d 879.

With regard to the predominance requirement of Rule 23(b), we must decide if the issues

common to all plaintiffs predominate over the individual issues. *Baker v. Wyeth-Ayerst Labs.*

*Div.*, 338 Ark. 242, 992 S.W.2d 797 (1999). The predominance requirement, however, is

more stringent than the commonality requirement. *Vickers*, 2009 Ark. 259, at 9, 308 S.W.3d

at 578 (citing *BPS, Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000)). In *Vickers*, we

explained the standard for testing predominance:

When deciding whether common questions predominate over other questions affecting only individual members, this court does not merely compare the number of individual versus common claims. Rather, this court decides if the preliminary, overarching issues common to all class members "predominate over" the individual issues, which can be resolved during the decertified stage of a bifurcated proceeding. Thus, the mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning the defendant's alleged wrongdoing that must be resolved for all class members.

*Id.* (internal citations omitted).

If a case involves preliminary issues common to all class members, predominance is satisfied even if the court must subsequently decertify a class due to individualized damages. *Snowden*, 366 Ark. 138, 148, 233 S.W.3d 664, 670. However, if the preliminary issues are sufficiently individualized, then predominance is not satisfied, and class certification is improper. *Id.*, 233 S.W.3d at 671.

Phillips contends that the arguments presented in the present case were already rejected in *Lamb* and *Thomas*; thus, we should affirm the circuit court's finding of commonality and predominance. We agree.

The commonality requirement is clearly satisfied because, as required in *Vickers*, *supra*, Robinson's act of understaffing, independent of any action by Phillips, establishes a common question relating to the entire class. Further, we find that the predominance requirement has been satisfied. In *Lamb*, we explained *Thomas* as follows,

In *Thomas*, *supra*, the plaintiffs pursued a class-action suit against a nursing home located in Batesville. The complaint asserted that, pursuant to the facility's admission agreement, as well as the Residents' Rights Act, the nursing home was obligated to take care of the residents' basic daily needs and that the nursing home had failed to meet this obligation by neglecting to properly and adequately staff the facility. The circuit court granted class certification, finding that the common issues predominated

over individual ones. On appeal, the nursing home argued that the circuit court erred by certifying the class because the identified questions of fact could not be resolved without a detailed examinations of the individual circumstances of each class member and because the predominant issues raised involved only individualized issues of liability, causation, and the existence and extent of injury for each class member. This court rejected the nursing home's argument and affirmed the class-certification order, holding as follows:

> We conclude that one main and preliminary overarching issue does exist in this case, which is whether the Batesville nursing facility was chronically understaffed so as to violate the residents' statutory and contractual rights. In its order, the circuit court found thirteen questions of fact and law and five issues that must be resolved, which are common to all class members. The five issues all involved understaffing. The court then found that the common factual and legal issues predominated over the individual issues because all residents relied upon the same Resident Admission Agreement and statutory law to assert that systemic understaffing resulted in undignified living conditions for the residents, which breached that agreement and violated state law. The circuit court recognized that once these predominating issues were resolved, the class could be decertified, if necessary, to determine individual restitution and damage issues for class members for breach-of-contract and statutory violations.

> We hold that the circuit court did not abuse its discretion in determining that the overarching issue of understaffing is common to the class and may be resolved before individual issues of damages must be addressed. The predominance criterion is satisfied in this case. *Thomas*, 370 Ark. at 318, 259 S.W.3d at 450.

2015 Ark. 253, at 11–12, 465 S.W.3d at 832–33.

Thus, in holding that the circuit court did not abuse its discretion in finding that the element of predominance had been satisfied, the court explained that "the common, overarching issues concern whether appellants have liability for chronic understaffing under the admission agreement and the asserted statutes." 2015 Ark. 253, at 16, 465 S.W.3d at 835. Accordingly, based on *Lamb*, as to the breach of contract, ADTPA, and unjust-enrichment claims, we hold that the circuit court correctly found that the commonality and predominance

requirements of Rule 23 had been met.

## B. Superiority

Next, Robinson argues that a class action is not the superior method for handling the litigation in this case. In response, Phillips argues that a class action is the superior method for resolving the pervasive common question of understaffing.

In finding that the superiority requirement had been satisfied, the circuit court relied on *Lamb* and *Thomas*. In *Thomas*, this court explained

> Rule 23(b) requires that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. This court has held that the superiority requirement is satisfied if class certification is the more "efficient" way of handling the case, and it is fair to both sides. Where a cohesive and manageable class exists, we have held that real efficiency can be had if common, predominating questions of law or fact are first decided, with cases then splintering for the trial of individual issues, if necessary. This court has further stated that when a trial court is determining whether class-action status is the superior method for adjudication of a matter, it may be necessary for the trial court to evaluate the manageability of the class.

*Thomas*, 370 Ark. at 319, 259 S.W.3d at 451 (citing *Asbury Auto. Grp., Inc.*, 366 Ark. at 611, 237 S.W.3d at 469-70 (quoting *Van Buren Sch. Dist. v. Jones*, 365 Ark. 610, 621, 232 S.W.3d 444, 453 (2006)).

Robinson argues that in requiring individual trials as to injury, causation, and damages, judicial economy is not met. Phillips correctly notes that this specific argument was rejected in *Lamb*. In *Lamb*, the court explained that "determining the central questions whether understaffing creates contractual or statutory liability and whether chronic understaffing occurred are more efficiently handled in a single proceeding." *Id*. at 19. In *Lamb*, we explained that "the determination of understaffing is not unmanageable simply because twelve

facilities are involved." *Id.* Thus, as in *Lamb*, the class as certified in the present case is a cohesive and manageable group because the common question of understaffing can be ascertained on a classwide basis.

### C. Typicality

Next, Robinson argues that the typicality requirement has not been met because Phillips's claims are not typical of class members who resided at Robinson prior to or after Ms. Phillips's six-month residency from August 2013 to February 2014. Robinson contends that typicality is not satisfied because staffing during Ms. Phillips's residency was different from the staffing before or after. Robinson relies on the written staffing reports and asserts that the staffing levels at Robinson varied significantly over the course of the class period. Further, Robinson argues that Phillips's claims are not typical because his claims narrowly focus on one potential area of wrongdoing to the exclusion of other events or practices. Phillips has focused his allegations exclusively on claims of understaffing. Therefore, any class member who has a claim based on an alternate legal theory would be precluded from bringing such a claim.

In response, Phillips relies on the circuit court's finding that this argument requires resolution of the "ultimate question of whether the nursing home was chronically understaffed. The Court cannot delve into the merits of the case when deciding the procedural issue of the class certification." As to typicality, we agree with Phillips. We have said that neither the circuit court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met. *Lamb*,

2015 Ark. 253, at 20–21, 465 S.W.3d at 837.

The circuit court specifically found that "[Phillips] alleges the same unlawful conduct affects hundreds of residents at the Facility. That is, [Robinson's] normal practice of chronically understaffing the Facility so as to violate the residents' contractual and statutory rights. The alleged conduct is the same and the claims are based upon the same legal theories. [Phillips] has 'alleged the same unlawful conduct was directed at or affected both the named Plaintiff and the class sought to be certified.' Accordingly, typicality is satisfied."

The focus of the typicality requirement is on the conduct of the alleged wrongdoer giving rise to the claim rather than on the injury sustained from the conduct. *Kersten v. State Farm Mut. Auto. Ins. Co.*, 2013 Ark. 124, 426 S.W.3d 455.

> The typicality requirement is stated in Rule 23(a): "One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class." Ark. R. Civ. P. 23(a). The typicality requirement is satisfied if the class representative's claim arises from the same wrong allegedly committed against the members of the class. Thus, a representative's "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if [the representative's] claims are based on the same legal theory." Moreover, "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Thus, when analyzing the factor of typicality, this court focuses upon the defendant's conduct and not on the injuries or damages suffered by the plaintiffs.

*DIRECTV, Inc. v. Murray*, 2012 Ark. 366, at 13–14, 423 S.W.3d 555, 564. (internal citations omitted). Because the class representative's claim arises from the same alleged wrongful conduct, understaffing, the circuit court correctly found that the typicality requirement had been satisfied.

D.  Class Definition

Robinson argues that the class definition is overbroad.  In response, Phillips contends that the class definition is not overbroad and has been approved by this court in *Lamb*.  We agree with Phillips because the class definition in the present case is almost identical to the class definition we approved in *Lamb*.  In finding no abuse of discretion in the circuit court's definition of the class, we explained:

> Before a class can be certified under Rule 23, the class description must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.  The class must first be susceptible to precise definition to ensure that the class is neither "amorphous," nor "imprecise."  Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria.
>
> Appellants misstate our case law as requiring that a class must be defined to limit membership only to those who have sustained actual harm. What we have said, many times, is that "[c]learly defining the class ensures that those people who are actually harmed by a defendant's wrongful conduct will participate in the relief ultimately awarded." Ensuring the participation of all those who have been harmed does not translate into a requirement that the definition must include an element of actual harm. On the contrary, it would be improper to define a class by reference to actual injury because this would require a determination of the merits of a putative class member's claim. However, neither the circuit court nor the appellate court may delve into the merits of the underlying claim when deciding whether the requirements of Rule 23 have been met.

*Lamb*, 2015 Ark. 253, at 20–21, 465 S.W.3d at 837 (internal citations omitted).

In *Lamb*, the class definition included residents and estates of residents "who resided at the Golden Living nursing homes in Arkansas from December 2006, through July 1, 2009." Here, the class definition includes residents and estates of residents "who resided at the Robinson Nursing and Rehabilitation Center from June 11, 2010, to present." We recognize

that the class definition here is not a closed group. However, the class definition is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.

Because the present class definition is nearly identical to the class definition in *Lamb*, the circuit court did not abuse its discretion in defining the class.

Having found the above requirements for a class action to be satisfied, we affirm the circuit court's class certification as to Phillips's claims of breach of contract, ADTPA, and unjust enrichment.

## II. *Negligence*

Next, Robinson argues that Phillips's negligence claim is inappropriate for class certification. Specifically, Robinson contends that the foundational elements of breach, causation, and injury are incapable of classwide resolution. In response, Phillips relies on *Lamb* and urges us to affirm the circuit court's order. However, this argument is misplaced because *Lamb* did not contain a negligence claim and was not certified in Lamb's class-certification order. Therefore, *Lamb* is not on point for our analysis of the negligence claim.

### A. Commonality & Predominance

Turning to our review of commonality and predominance with regard to negligence, we must review the elements of negligence. Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries. *Branscumb v. Freeman*, 360 Ark. 171, 200 S.W.3d 411 (2004) (citing *Wilson*

14

*v. Rebsamen Ins., Inc.*, 330 Ark. 687, 957 S.W.2d 678 (1997)).  The burden in a negligence case is always on the party asserting the claim; negligence is never assumed.  *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439 (citing *Morehart v. Dillard Dep't Stores*, 322 Ark. 290, 908 S.W.2d 331 (1995)).  Negligence may be established by direct or circumstantial evidence, but a plaintiff may not rely on inferences based on conjecture or speculation.  *Id*. (citing *Ark. Kraft v. Cottrell*, 313 Ark. 465, 855 S.W.2d 333 (1993)).  Therefore, negligence requires an individual analysis of each plaintiff's specific allegations.  Even assuming there are questions common to each class member, we cannot say that these common issues clearly predominate over the individual issues.  Stated differently, there is "no one set of operative facts" to establish Robinson's liability to any given class member.  *Vickers*, 2009 Ark. 259, at 19, 308 S.W.3d at 582–583 (citing *Baker*, 338 Ark. at 247, 992 S.W.2d at 800).  Here, each class member's claim would result in an individualized inquiry as to whether understaffing was the proximate cause of his or her injury.  Because the individualized questions concerning proximate causation clearly predominate over the common questions, class certification as to Phillips's negligence claim is inappropriate.  Accordingly, under the facts of this case, the proximate-causation analysis necessarily requires an individual inquiry, which renders Phillips's negligence claim inappropriate for class certification.

Based on the highly individualized nature of the negligence claim, we hold that the circuit court abused its discretion in certifying the class action as to negligence.  Accordingly, we reverse and remand with instructions to decertify the class as to Phillips's negligence

claim.[3]

Affirmed in part; reversed and remanded in part.

KEMP, C.J., and GOODSON, HART, WYNNE, and WOMACK, JJ., concur in part and dissent in part.

**JOHN DAN KEMP, Chief Justice, concurring in part and dissenting in part.** I concur with the majority that the circuit court did not abuse its discretion in finding that the proposed class fulfilled the Rule 23 requirements of commonality, predominance, superiority, and typicality on Phillips's breach of contract, Arkansas Deceptive Trade Practices Act, and unjust enrichment claims. *See* Ark. R. Civ. P. 23 (2016). I also concur with the majority that the circuit court did not abuse its discretion in defining the class. But I dissent from the majority's holding that the circuit court abused its discretion in certifying the class action on Phillips's negligence claim. In my view, the circuit court properly granted Phillips's motion for class certification, without delving into the merits of each claim, based on the class-certification criteria set forth in Rule 23. For these reasons, I concur in part and dissent in part.

When reviewing a circuit court's class-certification order, we review the evidence contained in the record to determine whether it supports the circuit court's decision. *See Georgia-Pac. Corp. v. Carter*, 371 Ark. 295, 265 S.W.3d 107 (2007). We have stated that

---

[3] Because we hold that the predominance requirement has not been satisfied as to the negligence claim, we do not reach the other requirements of Rule 23 of the Arkansas Rules of Civil Procedure.

the issue of whether to certify a class is not determined by whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. We have also observed that it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action. An order denying or granting class certification is separate from the merits of the case. Although we do not delve into the merits of the underlying claims in a potential class-action case, we will review the trial court's order to determine whether the requirements of Rule 23 are satisfied.

*Am. Abstract & Title Co. v. Rice*, 358 Ark. 1, 9, 186 S.W.3d 705, 710 (2004) (internal citations omitted).

The overarching question relating to the entire class is whether Robinson chronically understaffed its facility in violation of the residents' statutory and contractual rights. Here, the majority mistakenly delves into the merits of the underlying claims in the class-action case by certifying the class on all claims except negligence. This court has stated that a circuit court may not consider "whether the plaintiffs will ultimately prevail, or even whether they have a cause of action," because "the propriety of a class action is 'basically a procedural question.'" *Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 335, 5 S.W.3d 423, 431 (1999) (quoting *Farm Bureau Mut. Ins. Co. v. Farm Bureau Policy Holders & Members*, 323 Ark. 706, 709, 918 S.W.2d 129, 130 (1996)). Thus, any underlying claims, such as negligence, are for the jury to decide at trial. Accordingly, I would hold that the circuit court properly granted Phillips's motion for class certification and would affirm.

GOODSON and WYNNE, JJ., join this opinion.

**JOSEPHINE LINKER HART, Justice, concurring in part and dissenting in part.**

I agree with the majority's holding that the negligence claim in this case is not amenable to class certification and should be decertified. I respectfully dissent, however, from

17

the majority's conclusion that the circuit court properly certified as a class action appellees' claims that were based on contract, unjust enrichment, and the Arkansas Deceptive Trade Practices Act.

In *GGNSC Arkadelphia, LLC v. Lamb*, 2015 Ark. 253, 465 S.W.3d 826, this court emphasized that the common factual and legal issues predominated over the individual issues because all residents relied on a standard admission agreement and statutory law to assert chronic understaffing. In *Lamb*, chronic understaffing was shown through an objective examination of the mandatory written reports of all shifts that failed to meet minimum staffing requirements. Ark. Code Ann. § 20-10-1407 (Repl. 2014). Thus, understaffing could be determined on a classwide basis.

Here, however, the majority goes a step further. There is no suggestion of chronic understaffing in violation of the statutory staffing-to-resident ratios provided in Ark. Code Ann. § 20-10-1403. Rather, appellees are relying on the general language that "the staffing standard required by this subchapter shall be the minimum number of direct-care staff required by nursing facilities and shall be adjusted upward to meet the care needs of residents." Ark. Code Ann. § 20-10-1402(b)(1). Unlike a determination of staffing that is based on specific ratios, this staffing standard is subjective and leaves the court without an objective standard to ascertain, on a classwide basis, whether Robinson was understaffed. A determination of the care needs of the residents and whether any upward adjustment was required would require a highly individualized inquiry as to each resident because each resident clearly had different care needs.

Because the court must consider each class member's care needs, there is no one set of operative facts to establish appellants' liability to any given class member. Rather, the issue of understaffing and whether each class member's care needs were met is sufficiently individualized and fails to satisfy the commonality and predominance requirements. Thus, even though appellees allege understaffing, this case is not similar to *Lamb*, and it was inappropriate for the circuit court to certify the case as a class action.

WOMACK, J., joins.

*Hardin, Jesson & Terry, PLC*, by: *Kirkman T. Dougherty*, *Jeffrey W. Hatfield*, *Stephanie I. Randall*, and *Kynda Almefty*, for appellants.

*Campbell Law Firm, P.A.*, by: *H. Gregory Campbell*; and *Reddick Moss, PLLC*, by: *Brian D. Reddick*, for appellee.